HAMILTON W. CONKLIN, EXECUTOR, *vs.* FRANK H. DAVIS AND OTHERS.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

A testator, after giving numerous legacies, closed his will as follows:—" and the remnants of said estates to be divided *pro rata* among the heirs." The only heirs were seven grandchildren, two of whom were children of two of the testator's deceased sons and five the children of a deceased daughter. Held that they took *per stirpes* and not *per capita.*

Where a testator's intention in such a matter is in doubt, the statute of distributions is to be taken as a guide and the rules of inheritance followed.

Legacies were given by the testator to sundry charitable corporations whose capacity to hold funds was limited by their charters. In the court below no evidence was offered by the heirs claiming the property that the corporations had no capacity to receive further funds, but the objection was made in this court that the corporations had not shown their capacity to take them. Held that the objection was not well founded.

Bequests were made to the "poor" and to the "Sunday school" of the "First Baptist church in H." Held to be valid as charitable gifts.

The bequest to the Sunday school was as follows:—" Also to the Sunday school of the First Baptist Church the sum of $500, under the supervision of the trustees of said church." And that for the poor of the church was as follows:—" I give the trustees of the First Baptist Church in H, in trust for the poor of the church, the sum of $500." The deacons of the church were often spoken of as the "trustees" of the church. Held that the deacons of the church and their successors in the office took the funds as individuals in trust for the Sunday school and the poor of the church.

And if they could not so take, the bequests would not fail, as equity would supply a trustee.

Sundry bequests to charitable societies by wrong names, held to go to societies that were shown to have been intended by the testator.

[Argued October 5th—decided October 25th, 1893.]

SUIT for the construction of a will; brought to the Superior Court in Hartford County, and reserved, on facts found, for the advice of this court. The case is stated in the opinion.

*C. M. Joslyn*, for the executor.

*E. H. Hyde, Jr.*, for the heirs claiming *per capita*.

*E. D. Robbins*, for the heirs claiming *per stirpes*.

*E. B. Bennett*, for sundry charitable societies which were legatees under the will.

FENN, J. This is a reservation for advice concerning the construction, validity and effect of the following language, contained in the last will and testament of Joseph W. Dimock, late of Hartford, deceased:—

"I hereby give to each of my seven grandchildren," (naming them) "two thousand dollars each." (Then follow bequests to two nieces, not in question.) "I give the trustees of the First Baptist Church in Hartford, in trust for the poor of said church, the sum of $500; I give to the Baptist Domestic Miss. Society the sum of $500; also the Baptist Foreign Miss. Society the sum of $500; also the Baptist Home Mission Society, the sum of $500; also the Sunday school of the First Baptist Church, the sum of $500, under the supervision of the trustees of said church; and the remnants of said estate to be divided *pro rata* among the heirs."

The Superior Court, upon a hearing had before it, made a full finding of facts, unnecessary to recite at length, but from which it appears that after payment of all the debts, charges and legacies, a residue of the estate will remain; that the seven grandchildren named are the heirs at law and next of kin of the testator; that five of them are children of the deceased daughter of the testator, and claim that such residue should be divided *per capita*, and the other two are sons respectively of deceased sons of the testator, and claim that

OCTOBER, 1893. 379

such division should be made *per stirpes ;* that the "Deacons of the Baptist Church in Hartford," is "a corporation duly organized under a charter granted by the General Assembly of Connecticut, in May, 1811, and that under its charter it is authorized to hold estate, given to or otherwise vested in them, in trust for the use and benefit of said church, provided that the income of such estate shall by them be expended for the support of the gospel ministry in said church, and for building and repairing a suitable house of public worship for said church, and for no other purpose whatever; that said corporation represents the church, which has long been designated and known, both by its members and the general public, as the First Baptist Church in Hartford, and that, among the members of said church, in common speech the persons who hold the estate and funds for the use and benefit of the church are called the trustees of the church; that said corporation for many years has held funds in trust, the income of which has been expended yearly by the corporation in assisting members of said First Baptist Church who are poor and unable to support themselves; that said corporation for some years has held a fund, the income of which has been expended yearly in support of the Sunday school of said church, under the supervision of said corporation;" and the court also, as a conclusion from facts specially recited, found that the testator intended his gift to the "Trustees of the First Baptist Church" to be to the "Deacons of the Baptist church in Hartford," and his gift to the "Sunday school of the First Baptist Church under the supervision of the trustees of said Church," to be to the "Sunday school of the First Baptist Church," under the supervision of the "Deacons of the Baptist Church in Hartford;" his gift to the "Baptist Domestic Mission Society" to be to the "Connecticut Baptist Convention;" his gift to the "Baptist Foreign Mission Society" to be to the "American Baptist Missionary Union;" and his gift to the "Baptist Home Mission Society" to be to the "American Baptist Home Mission Society." And it was further found that "no evidence was offered on the trial as to the amount of funds or property held or enjoyed by any

of the corporations claiming under the will, nor as to the income received by any of said corporations from any funds or property."

Upon this finding the only contested questions presented to us by the reservation are—*First*, whether the division of the remainder of the estate among the grandchildren shall be *per capita* or *per stirpes*. *Second*, whether the corporations, other than the " Deacons of the Baptist Church in Hartford," can take the bequests intended for them respectively, it appearing from their charters, in evidence, that the amount of property which they can hold is expressly limited, and their power to take these bequests not having been proved by showing the amount of their property now held to be within the limits fixed. *Third*, whether the trusts respectively for " the poor," and for the " Sunday school" of the First Baptist Church are valid.

It is a settled principle of construction that, when the language and purpose of a will permit, if the testator's intention is in doubt, the statute of distributions is to be taken as a guide and the rules of inheritance followed. This principle was clearly laid down in *Lyon* v. *Acker*, 33 Conn., 222, and has been affirmed in repeated instances appearing in the subsequent volumes of our reports. And although, as was said in *Lyon* v. *Acker*, " perhaps there is no class of cases where precedents have so little weight as in the construction of wills," for that very reason perhaps there is none where principle, underlying precedent, should have so much. While it is needless, therefore, to refer more at length to the cases in which the question has arisen since *Lyon* v. *Acker*, which are all consistent with each other, it is important that our present decision should be based upon the principle on which they rest, and so be consistent with them. Hence it would be sufficient to say that where the testator directed " the remnants of said estate to be divided *pro rata* among the heirs," it must at least be doubtful whether he intended such division to be one at variance with the statute of distributions. How can it be clear that such was his purpose, when the language itself is apt, in all its parts, to denote a distri-

bution in accordance with such statute?   But we will go fur-
ther and say that, looking at mere probabilities, the provisions
of the will, taken as a whole, render it more likely than other-
wise that the testator did intend a division of the remainder
of his estate in accordance with the statute, *per stirpes* and
not *per capita.*   He gave to each of his grandchildren, nam-
ing them, an equal sum.   He then gave legacies to two nieces,
(concerning which no question arises,) and then the other
bequests recited.   He seems to have been confident that
there would be a residue not specifically disposed of, and he
provided that this should be divided among the heirs.   If by
" the heirs " he had intended something different from what
he would have done if he had said " my heirs," not his heirs
according to their respective rights as such by the rules of
inheritance, taking as heirs would take by descent, but had
intended that, though next of kin, they should take other-
wise and in a different indicated proportion, some greater
and some less than such rules prescribe, and so in fact as leg-
atees rather than as heirs, it would seem much more natural,
either to have made the bequests to others, without naming
the grandchildren, and then bequeathed them, by name, his
entire remaining estate as residue ; or if for any reason, not
apparent on the record, he had preferred not to do this, to
have used instead of " pro rata among the heirs," some such
expression as " between my said grandchildren equally," or
" among my grandchildren, all to share alike."   Failure to
employ such or equivalent language fairly indicates the
absence of such intent ; as, on the other hand, the use of ex-
pressions appropriate to denote a division in accordance with
the statute of distributions raises an implication that such
division was desired by the testator.   It was suggested how-
ever in argument that this construction gives no effect to the
term *pro rata.*   But in order to give it effect in favor of a
*per capita* division, it would be necessary to construe the
term as meaning an equal instead of a proportionate sharing,
for if we apply to it the true meaning, " in proportion," or
" according to the share of each," it is surely quite as apt to
denote a *per stirpes* division, which is in proportion to the

share of each as defined by the rule of law which has existed
in this state for two centuries and become so thoroughly
familiar to all as to seem a principle of natural justice, as a
*per capita* one, which can only be claimed to be proportionate
to amounts not different but identical, the legacies to each
of the grandchildren named being the same sum, two thou-
sand dollars.   And in this connection it ·may be worthy of
notice that in each of the two cases to which counsel claiming
a *per capita* division have called our attention, as the only
ones which they have been able to find where the words "*pro
rata*" have been judicially considered, when used to designate
in a will the proportional shares of the devisees, *Rosenburg* v.
*Frank*, 58 Cal., ·387, and *Ellis* v. *Meadows*, 84 N. Car., 92,
the term *pro rata* was aptly used because legacies of differ-
ent amounts had been made to the various legatees named.

The next question for our consideration is whether the
corporations, other than the "Deacons of the Baptist Church
in Hartford," can take the bequests intended for them re-
spectively, the only objection urged in this court being that
on the trial in the court below there was no evidence that
the amount of their property now held was within the lim-
its fixed by their respective charters.   In reference to this
objection it is sufficient to say that none of the parties re-
spondent in any way pleaded or claimed such restriction on
the trial in the court below, but the case was allowed to be
closed without any evidence being offered upon it by those
claiming the residuary estate.   In *White* v. *Howard*, 38
Conn., 342, 344, 362, the heirs at law upon the trial did in-
sist upon such incapacity of certain societies named to take,
and this court said—"We are not satisfied that this inquiry
can be legitimately made collaterally in a proceeding of this
sort.   Nor do we assent to the claim that the burden is on
the society to show its capacity to take in this respect."   We
therefore hold that the objection stated is not well founded.

The remaining question relates to the validity of the be-
quests for the "poor," and to the "Sunday school," of the
First Baptist Church.   It is claimed by counsel for those of
the heirs who contest the validity of these gifts that the

"Deacons of the Baptist Church in Hartford," whom the court below found to be intended by the testator in using the language, " Trustees of the First Baptist Church," could not take, because the corporation was limited not only as to the amount of property which it might hold, but was also expressly prohibited from taking money for any other purpose than the support of the gospel ministry and the maintenance of a church building; and that therefore " any intention of the testator to give to this corporation a bequest for the poor, and a bequest for a Sunday school, is an illegal intention, and such bequests are void." It is said, further, that a gift to a Sunday school is void because it is not even a voluntary association, and there is no one to receive it. So far as relates to the gift in trust for the poor of the church, there can be no doubt that such a gift is charitable, (Gen. Statutes, § 2951,) and that the class to be benefited is sufficiently definite and certain. *Goodrich's Appeal from Probate,* 57 Conn., 285; *White* v. *Howard, (supra;) Coit* v. *Comstock,* 51 Conn., 352; *Woodruff* v. *Marsh,* 63 Conn., 125. Such being the case, if the trustees named were incapable to take and act as such it would not affect the validity of the gift. The court would supply trustees. *Storrs Agricultural School* v. *Whitney,* 54 Conn., 345; *Goodrich's Appeal, (supra;) Dailey* v. *City of New Haven,* 60 Conn., 314. It could therefore do the contesting heirs no good were we to defeat in part the wish of the testator by deciding the trustees chosen by him incapable to take as such and to hold this fund, as the court below finds that for many years other funds have been held in trust, the income of which has been expended in assisting members of said church who are poor and unable to support themselves. We do not find it necessary to do this, because, if there be a doubt whether the relief of the poor of the church is a part of the support of the ministry of the Gospel of Him who declared that at His coming in glory, when before Him should be gathered all nations, he who had given meat to the hungry, drink to the thirsty, lodging to the stranger, clothing to the naked, and visitation to the sick and in pris-

on, to the least of the brethren, should be accounted as having done it unto Him, and should be blessed of the Father and inherit the kingdom prepared from the foundation of the world, there can, we think, be no doubt of the competency of the trustees intended to take as individuals, described by the name of their office as "Deacons· or "Trustees," a principle recognized and followed in *Beardsley* v. *Selectmen of Bridgeport*, 53 Conn., 489, where the court said (p. 492)—" The office of selectmen is continuous by law. The *persons* from time to time constituting the board of selectmen of the town of Bridgeport are joint trustees in perpetual succession." Also in *Storrs Agricultural School* v. *Whitney*, (*supra*,) where, the selectmen of the town of Mansfield having been named as trustees of a charity, the court (p. 345) speaks of them as "the persons who should at any time hold office as selectmen of that town," a gift very different in the character of the trustees named from that of *Dailey* v. *City of New Haven*, (*supra*,) which was to the "City of New Haven."

The gift to the "Sunday school" we regard as clearly charitable within the meaning of the statute, and that it might be held such under either of three provisions thereof, as being for "the maintenance of the ministry of the gospel," or of a "school of learning," or as a general "public and charitable use." That it is not incorporated or is a voluntary association, is of no consequence. Whether it could take directly without such incorporation, and not being such association, it is unnecessary to determine, for it was the plain intent of the testator that it should not so take. Nothing can, however, be more certain than the class of beneficiaries intended or the object to be promoted. Such benefit is to be bestowed, and such object attained, "under the supervision of the trustees," (the deacons) of the church, who were therefore intended as the holders of the fund in trust; and the same principle is applicable in behalf of the legality of such trust, as we have previously stated in reference to the gift for the poor.

The Superior Court is advised:

*First.* That the division of the remnant or remainder of the estate should be made among the grandchildren *per stirpes* and not *per capita.*

*Second.* That the bequests to " The Baptist Domestic Miss. Socy.," " The Baptist Foreign Miss. Society," and " The Baptist Home Mission Society," are valid gifts to the corporations intended by the testator, namely, the Connecticut Baptist Convention, The American Baptist Missionary Union, and the American Baptist Home Mission Society respectively.

*Third.* That the bequests in trust for " the poor," and to the " Sunday school," of the First Baptist Church, are each valid, and the persons from time to time in succession holding the office of deacons of the Baptist Church in Hartford, commonly known as The First Baptist Church in Hartford, are competent to take and hold in trust, for the purposes named, the respective amounts so bequeathed.

In this opinion the other judges concurred, except CAR-PENTER, J., who dissented upon the last point.