GUSTAVUS ELIOT, EXECUTOR, TRUSTEE AND GUARDIAN, ET AL. APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1902. TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testatrix gave the residue of her estate in trust to pay a small annuity, and for the support of her brother *J*, directing that the principal might be used for such support if the income should prove insufficient, and provided that upon his decease the rest of her estate, except the homestead, should be divided into three equal parts, one of which, amounting to more than $150,000, was given to the Ladies' Seamen's Friend Society of New Haven, "for the aiding of destitute seamen," and the other two thirds to St. Paul's Episcopal Society, one half to be used for the purpose of erecting an Episcopal chapel, and sustaining a mission, on said homestead, which was also given to said society, and the other half for providing "a home for ladies of advanced age, or infirm," who then were or might thereafter become connected with said St. Paul's Society, or with the mission or church to be established on said homestead. At the death of the testatrix in 1888 said Seamen's Friend Society was empowered by its charter to purchase and receive property, real and personal, and to hold the same free from taxation, to an amount not exceeding $15,000; but in 1895, and prior to the decease of *J*, the charter was amended so as to enable the society to receive and hold much more than the amount in question. Upon an appeal

by the heirs at law from an order of the Court of Probate directing the trustee to distribute the residue of the estate to said societies, it was *held :—*

1. That the limitation of $15,000 in the original charter of the Seamen's Friend Society, was not confined to the exemption from taxation, but applied generally to the society's capacity to acquire property.

2. That the bequest to said society, being for a lawful, charitable use— the relief of a certain, definite class of the poor—and carrying an implied power to select the particular persons to be relieved, was valid, even if the society, which was to receive no beneficial interest, were legally incapable of accepting the trust; but that the action of the State had made the society fully competent to receive the legacy and administer the charity long before it became operative in enjoyment, and while it remained uncertain whether anything would be left to be enjoyed.

3. That there was no occasion for the appointment of said society as trustee, no trust existing except by construction of law, and it having become fully capable of holding the fund in the manner directed by the will.

4. That even if it were true that one of the purposes of said society was not charitable, that fact would be immaterial upon an inquiry as to the society's capacity to receive a bequest given exclusively for another purpose which was charitable.

5. That the bequest for the erection of an Episcopal chapel and the support of a mission in connection therewith, would not be adjudged void, or impossible of execution, merely for reasons which challenged the expediency of the charity because no such mission then existed, because the place selected was unfitted geographically, because few persons would be likely to attend, and those few would be better served and accommodated elsewhere, or because the establishment of the proposed charity would be "a wasteful expenditure of trust funds." Such conclusions, or reasons of appeal, unless based upon other facts alleged which justify them, do not present any traversable issue.

6. That it was immaterial that the ministry of the gospel which the bequest was designed to maintain was that of a particular denomination of Christians, to be supported in a particular church edifice.

7. That the terms of the bequest for a home for ladies of advanced age, or infirm, sufficiently implied that those only could share in the benefits of the gift who had no home, or no comfortable one ; that furnishing such shelter to such women was one mode of relieving the poor, and thus the bequest fell directly within our statute of charitable uses ( § 2951 ); and the fact that the relief was to be confined to members of one or two churches of a particular religious denomination did not deprive it of its charitable character.

8. That it was not necessary under the laws of this State, to uphold

a perpetual trust for the relief of the poor, that it should be, in the strict sense, a "public" one: it is sufficient if it is not given for private, selfish uses, having no respect to the good of others.

9. That St. Paul's Society had implied power to decide as to the best means of applying the funds for a home for aged women.

In equity the inability or failure of a trustee to accept never involves a failure of the trust.

A demurrer admits the truth of such statements as can be deemed allegations of fact. It does not admit the truth of such as merely express the opinion of the pleader. An opinion may be so pleaded as to present a material issue, but it is then a conclusion as to a material point that reasonably follows from certain premises which are either established or may be a proper subject for proof.

In an equitable action by heirs at law to establish a resulting trust arising out of an attempted testamentary disposition, evidence may be adduced to show that such disposition directs what it is impossible to accomplish, provided this impossibility has been sufficiently averred.

Courts of probate in ordering the distribution of testate estates may consider events, whether prior or subsequent to the testator's death, so far as may be necessary to enable them to apply correctly the description of the parties to be benefited, and to effectuate the true intent of the whole instrument. They do not, however, have jurisdiction to make any final adjudication upon the validity or invalidity of testamentary trusts by reason of alleged difficulties in carrying them into execution, nor because they may deem them unwise in principle.

The Superior Court, on an appeal from such an order, has a wider jurisdiction, but it is one to be exercised with reserve and caution.

Even if the controlling purpose of a charitable bequest were to perpetuate the name and memory of the donor's family, that would not tend to invalidate the bequest. The motive for doing a lawful act, whatever it may be, cannot make the act unlawful.

Whether the expression "for any other public *and* charitable use," in General Statutes, § 2951, is not equivalent to "for any other public *or* charitable use," *quære.*

Argued January 29th—decided March 5th, 1902.

APPEAL by the heirs at law of Betsey Bradley from a decree of the Court of Probate for the district of New Haven, ordering the residue of her personal property, amounting to $478,000, to be distributed to the residuary legatees named in her will, taken to the Superior Court in New Haven County and reserved by that court, *Shumway, J.,*

Eliot's Appeal.

upon a demurrer to the reasons of appeal, for the consideration and advice of this court.*

The material portions of the will of Betsey Bradley were as follows: —

" Ninth. I give, devise and bequeath to my trustee hereinafter named, my homestead in New Haven, with all of the household furniture therein and all other property of every nature (except the bequests mentioned in the foregoing sections of this my will), of which I may die possessed; all of which is to be held and used by said trustee for the following purposes, viz: to safely invest said trust estate, to change investments from time to time as he may deem necessary, and to pay from said estate to Ann Forbes, yearly during her lifetime, the sum of one hundred thirty-three & $\frac{34}{100}$ dollars, in semiannual payments, in the months of June and December, in consideration for property received from my brother, David Forbes.

" To apply the residue of the income, or so much thereof, of said estate as in the judgment of my said trustee may be necessary for the comfortable support of my brother, Josephus Forbes, during his lifetime; and to furnish him with suitable burial and monument at his grave, after his death; and if at any time from any cause the income from said trust shall not be sufficient for the above-named purposes, then I authorize my said trustee to use so much of the principal of said trust estate as may be necessary for said purposes. If the income of said trust estate should not all be used as aforesaid then the surplus shall be added to the principal and shall become part thereof. It is my will to give my trustee full power to furnish such support for my brother Josephus as he may deem best: either by employing some suitable person to occupy the house belonging to said estate,

---

* Before proceeding with the argument in this court a question arose as to which party had the right to open and close. The heirs at law claimed it under Rules of Court, § 48, p. 105; and the residuary legatees because they were bound to maintain the legal sufficiency of their demurrer. After a brief consultation the court ruled that the residuary legatees should open and close.

and care for my said brother; or by providing for him otherwise as said trustee .may deem best.

"Tenth. At the death of my brother Josephus I give and bequeath to the episcopal church society of New Haven known as 'St. Pauls' six hundred dollars, one hundred dollars of the same I will be invested by the wardens and vestry of said society, the income therefrom to be used for the perpetual care of my burial lot in East Haven cemetery.

"Eleventh. To my nephew, Alfred Forbes, and my niece Mary Ann Eliot, I give and bequeath the sum of two hundred dollars, each.

"Twelfth. I give, devise and bequeath my homestead to the episcopal church society, of New Haven, known as 'St. Pauls,' for the purpose of erecting a chapel thereon.

"Thirteenth. In the event of Ann Forbes surviving my brother Josephus, my trustee is authorized to reserve a sum from my estate sufficient to produce an income that will pay her annually the sum of one hundred thirty-three and $\frac{34}{100}$ dollars; and at her death the amount so reserved with any addition shall be divided in like manner as provided in the following section of my will.

"Fourteenth. All the rest and residue of my property and estate of whatever kind and wherever situated, held by my trustee at the death of my brother Josephus, I will be divided into three equal parts, and I give and bequeath the same as follows. One-third part to 'The Ladies' Seamen's Friend Society' of New Haven, a corporation organized under the laws of Connecticut, for the aiding of destitute seamen. The remaining two-thirds, parts, I give and bequeath to the episcopal church society of New Haven, Connecticut, known as 'St. Pauls' to be used as provided in the following (15th) fifteenth section of this my will.

"Fifteenth. Of the two-thirds parts bequeathed to the said episcopal church society, known as 'St. Pauls' I will that one-half of the same be used by the wardens and vestry of said society, for the purpose of erecting an episcopal chapel, and sustaining a mission upon my homestead; and in the erection of said chapel it is my wish that so much of the

material in my house may be utilized as appears practical; and the said chapel shall be known as the Forbes Chapel. Whenever the said mission can demonstrate to the satisfaction of the wardens and vestry of the said 'St. Pauls Society' that it is capable of maintaining itself as an independent church, then, when properly organized under the general laws of the episcopal church and the laws of the State of Connecticut, the said wardens and vestry of 'St. Pauls Society' shall convey to said church society so ·organized all of the property received from my estate, for the use and benefit of said mission, to said church society to be its property forever.

"The remaining half I direct the wardens and vestry of the said St. Paul's Society to invest in such a manner as will best provide a home for ladies of advanced age, or infirm, who are or who may hereafter become connected with the said St. Paul's church society, or with the mission or the church that is to be established upon my homestead, as hereinbefore provided for."

The testatrix died in 1888, aged 80, leaving a net estate of more that $400,000. She was a member of St. Paul's Episcopal Society. Josephus Forbes died in 1900.

"The Ladies' Seamen's Friend Society of the city of New Haven" was incorporated in 1860 (5 Special Laws, 347) "for the purpose of aiding the destitute seamen who may frequent the port of said city, and of endeavoring to benefit the temporal and spiritual interests of such seamen as chance or commerce may bring to said port," and was made "capable in law to purchase and receive all kinds of property, real and personal, and the same to hold free from taxation, for the purposes of their incorporation, to an amount not exceeding fifteen thousand dollars, and the same may sell and dispose of at pleasure." In 1895 (12 Special Laws, 290) its charter was amended by changing its name and providing further that under said name it "may exist for its original purpose, and for the purpose of aiding seamen who may come into any port in the State of Connecticut, and of endeavoring to benefit the temporal and spiritual interests of such seamen,

and for such purposes shall be capable in law to purchase
and receive all kinds of property, real and personal, and to
sell and dispose of the same at pleasure; but all grants,
gifts, legacies, bequests, and contracts, heretofore or hereaf-
ter made to, by, or with said corporation by the name of the
Ladies' Seamen's Friend Society of the city of New Haven
shall nevertheless be effectual and valid; provided, that said
corporation shall at no time hold real or personal estate the
annual income of which shall exceed ten thousand dollars."

*William H. Williams, George D. Watrous* and *Edward A.
Harriman,* for the residuary legatees.

The bequest to the Ladies' Seamen's Friend Society is
valid. The right of the society to take a bequest, which, in
addition to the amount of property held by it, would exceed
$15,000, can only be questioned by the State in a proceeding
brought for that purpose. *Jones* v. *Habersham,* 107 U. S.
174; *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434; *Con-
gregational Church* v. *Everett,* 85 id. 79; *South & N. A. R. Co.*
v. *Highland Ave. & B. R. Co.,* 24 Southern Rep. (Ala.) 114;
*Farrington* v. *Putnam,* 90 Me. 405; *White* v. *Howard,* 38
Conn. 342, 363. The limitation relates only to the exemp-
tion of property from taxation. The language of the charter
speaks for itself. The Special Act of May 9, 1895, expressly
validates all bequests theretofore made to the society, and
is in itself a complete answer to the claim that the bequest
is void for illegality or incapacity of the society to take.
*Baker* v. *Clarke Institution,* 110 Mass. 88. The gift is in aid
of destitute seamen, and is for a charitable use. It is to be
lawfully administered by said society in trust, or by such
other trustee as may be appointed therefor, according to law.
A devise for a charitable use is never allowed to fail for
want, incapacity, or declination of a trustee. *American
Bible Society* v. *Wetmore,* 17 Conn. 188; *Storrs Agricultural
School* v. *Whitney,* 54 id. 345; *Dailey* v. *New Haven,* 60 id.
322; *White* v. *Howard,* 38 id. 366; *Sohier* v. *Burr,* 127
Mass. 221; 5 Amer. & Eng. Ency. of Law (2d Ed.), 920;

2 Perry on Trusts (5th Ed.), § 730. A gift to the Society is a gift in trust for the objects of the Society. *Winslow* v. *Cummings*, 3 Cush. 358; *American Bible Society* v. *American Tract Society*, 50 Atlantic Rep. (N. J. Eq.) 67; *American Bible Society* v. *Wetmore*, 17 Conn. 181. See also *White* v. *Howard*, 38 Conn. 368; *Coit* v. *Comstock*, 51 id. 352; *Farrington* v. *Putnam*, 90 Me. 405. If the society was incapable of acting as trustee at the death of the testatrix, as claimed by appellants, that incapacity has been removed by the Act of 1895, and administration of the trust was properly confided to this Society by the probate court. *Fellows* v. *Miner*, 119 Mass. 541.

The gift to St. Paul's Society for an old ladies' home is valid. That none of the ladies connected with the parish is either sick, poor or an object of charity, is immaterial, since such persons may at any time become members of the parish. The fact that the gift is limited to the members of the parish, or that the society is not engaged in the work of providing a home for old ladies, is immaterial. *Conklin* v. *Davis*, 63 Conn. 377; *Keith* v. *Scales*, 124 N. C. 497; *In re Willey's Estate*, 56 Pac. Rep. (Cal.) 550. The bequest is for a charitable purpose. *Harrington* v. *Pier*, 105 Wis. 307. The class of beneficiaries is sufficiently indefinite. *Conklin* v. *Davis*, 63 Conn. 377; *In re Wall*, 42 Ch. D. 510; *Powell* v. *Attorney-General*, 3 Merivale, 48; *Thompson* v. *Corby*, 27 Beavan, 649; *Attorney-General* v. *Comber*, 2 Sim. & S. 93. Trusts are not the less charitable in the eye of the law, because incidentally they benefit the rich as well as the poor, as, indeed, every charity that deserves the name must do, either directly or indirectly. *Lord Macnaghten in Commissioners* v. *Pemsel*, 1891, App. Cas. 583; *In re Macduff*, 1896, 2 Ch. 464; *Powell* v. *Attorney-General*, 3 Merivale, 48; *Thompson* v. *Corby*, 27 Beavan, 649; *Attorney-General* v. *Comber*, 2 Sim. & S. 93; *Attorney-General* v. *Power*, 1 Ball & B. 145; *In re Dudgeon*, 74 L. T. 613; *Keith* v. *Scales*, 124 N. C. 497; *Capen* v. *Skinner*, 177 Mass. 84; *Philadelphia* v. *Masonic Home of Phila.*, 160 Pa. 572; *In re Succession of Meunier*, 52 La. Ann. 79; *Downs* v. *Harper Hospital*, 101 Mich. 555;

*Rush County Commissioners* v. *Dindwiddie,* 139 Ind. 128; *Cresson* v. *Cresson,* Fed. Cas. No. 3,389; *Guilfoil* v. *Arthur,* 158 Ill. 600; *Charles* v. *Stockett,* 72 Md. 235; *Heiskell* v. *Chickasaw Lodge,* 87 Tenn. 668; *Hayden* v. *Connecticut Hospital,* 64 Conn. 320; *Hearns* v. *Waterbury Hospital,* 66 Conn. 98; *Duggan* v. *Slocum,* 92 Fed. Rep. 806; *Hayes* v. *Pratt,* 147 U. S. 557.; *Fellows* v. *Miner,* 119 Mass. 541; *Dailey* v. *New Haven,* 60 Conn. 314; *In re White,* 1893, 2 Ch. 41. The rule of construction as applied to charitable trusts, cited in *Russell* v. *Allen,* 107 U. S. 163, and approved by this court in *Hayden* v. *Connecticut Hospital,* 64 Conn. 324, is as follows : " The instrument creating them shall be so construed as to give them effect if possible, and to carry out the general intention of the donor when clearly manifested, even if the particular form or manner pointed out by him cannot be followed." The intention of the testatrix was to relieve distress, and her gift should, therefore, be construed as a gift to the poor old ladies of St. Paul's Parish. *Howell* v. *Attorney-General,* 3 Merivale, 48; *Thompson* v. *Corby,* 27 Beavan, 649; *Attorney-General* v. *Comber,* 2 Sim. & S. 93; *In re Wall,* 42 Ch. D. 510; *In re Dudgeon,* 74 L. T. 613; *Grand Prairie Seminary* v. *Morgan,* 171 Ill. 444. " Courts of equity go to the length of their judicial power rather than that such a trust should fail, applying the maxim, *Ut res magis valeat quam pereat.*" *Harrington* v. *Pier,* 50 L. R. A. 322. A bequest intended as a charity is not void, and will not be legally construed void, if it can possibly be made good. *In re Willey's Estate,* 56 Pacific Rep. (Cal.) 550.

The bequest for the erection and support of the mission chapel is valid. *Coit* v. *Comstock,* 51 Conn. 352. The purpose of erecting a chapel and supporting a mission is a charitable object which can be carried out adequately by the St. Paul's Society, even though no new independent church should ever be organized. The intention of a donor of a valid charitable trust must be carried out if possible, although the funds could be more efficiently administered in another place or applied to a different object. *Grand Prairie Seminary* v. *Morgan,* 171 Ill. 444.

*Henry Stoddard* and *A. Heaton Robertson*, with whom was *John W. Bristol*, for the heirs at law.

The bequest to the Ladies' Seamen's Friend Society of New Haven is ineffectual, and such one third, upon the death of Mrs. Bradley, vested in the appellants, as heirs at law and distributees of the testatrix. *Adye* v. *Smith*, 44 Conn. 60–70; 5 Reeves' Hist. of Eng. Law (Finlason), Amer. Ed. 1880, pp. 218, 222, note *a;* *In re Clark's Trust*, L. R. 1 Ch. Div. 497 (1875–1876) ; First Statute of Charitable Uses, passed in October, 1684, Col. Rec. of Conn. 1678–1689, p. 158; Rev. 1702, reprinted in 1715, p. 66; Rev. of 1750, p. 108; Rev. of 1888, § 2951; Statute 43 Eliz., Chap. 4. Because this noncharitable purpose is expressed in the charter of the Seamen's Friend Society, the entire fund may be applied to purposes not technically charitable, and as a gift in charity the whole bequest fails. *Coit* v. *Comstock*, 51 Conn. 352; *Livesay* v. *Jones*, 55 N. J. Eq. 204; *Norris* v. *Thompson*, 5 C. E. Gr. 523; *De Camp* v. *Dobbins*, 4 Stew. Eq. 695; *Weed et al.* v. *Scofield et al.*, 73 Conn. 674; *Hunter et al.* v. *Atty. Gen. and Hood*, L. R., A. C. (1899) 309; *Morice* v. *Bishop of Durham*, 9 Ves. 399; *Adye* v. *Smith*, 44 Conn. 60–70; *Huntington* v. *Carpenter*, Kirby, 46; *Hanchett* v. *King*, 4 Day, 365.

The Seamen's Friend Society has no power or capacity to receive or hold this legacy in excess of $15,000. *New York Firemen's Ins. Co.* v. *Ely*, 5 Conn. 560; 15 Johns. 383; 2 Cow. 399; *Farrell* v. *Winchester Ave. R. R. Co.*, 61 Conn. 127; Endlich on Interpretation of Statutes, § 354; Suth. on Statutes, § 327; Sedg. on Stat. Const. § 351; *Enfield Toll Bridge* v. *Hartford & N. H. R. Co.*, 17 Conn. 454, 464, 465; *New Haven* v. *Whitney*, 36 id. 373, 375; *Miles* v. *Strong*, 60 id. 393, 401; *Byrne* v. *Schuyler Electric Mfg. Co.*, 65 id. 336; *Bank of Augusta* v. *Earle*, 13 Peters, 587; *Occum* v. *Sprague Mfg. Co.*, 34 Conn. 529; *Goodspeed* v. *East Haddam Bank*, 22 id. 530; *Second Nat. B.* v. *Grand Lodge*, Federal Cases, No. 12,603; *Cent. Trans. Co.* v. *Pullman Palace Car Co.*, 139 U. S. 24, 43; *St. Peter's R. C. Cong.* v. *Germain*, 104 Ill. 440. There is no question of forfeiture. It is a question of

the capacity of the Seamen's Friend Society to "receive." There is here no room for the distinction made, or attempted to be made, in some cases, that the corporation had unlimited power to "take" but could only "hold" to a limited amount, and therefore to "hold" a greater amount involved only the possible forfeiture of the charter upon motion of the State. *Jarvis-Conklin Mortgage Trust Co.* v. *Willhoit*, 84 Fed. Rep. 517; *Matter of McGraw*, 111 N. Y. 66; *Wood* v. *Hammond*, 16 R. I. 116, affirmed in 1894, 18 R. I. 696; *De Camp* v. *Dobbins*, 31 N. J. Eq. 671, 690; *Cromie's Heirs* v. *Louisville Orphan's Home Society*, 3 Bush (Ky.), 365; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Bank of Michigan* v. *Niles*, 1 Dougl. (Mich.) 401; *Bogardus* v. *Trinity Church*, 4 Sandf. Ch. 633; *House of Mercy* v. *Davidson*, 90 Tex. 529; *Davidson College* v. *Chambers' Exrs.*, 56 N. C. 3 Jones' Eq. 253; *Starkweather* v. *Amer. Bib. Soc.*, 72 Ill. 50; *Hamsher* v. *Hamsher*, 132 id. 273; *Hough* v. *Cook County Land Co.*, 73 id. 27; *Alexander* v. *Tolleston Club*, 110 id. 65; 5 Thomp. Comm. on the Law of Corp. §§ 5784, 5798; *Nat. Home Bldg. & Loan Assn.* v. *Home Sav. B.*, 181 Ill. 35; *Hartford Deposit Co.* v. *Rector*, 92 id. 175.

The gift for "a home for ladies of advanced age, or infirm," does not create a charitable trust, because the inmates of the proposed home need not necessarily be poor; it is not even required that the beneficiaries be both aged and infirm. The bequest does not create a use which is both public *and* charitable. *Coit* v. *Comstock*, 51 Conn. 352; *Mallory* v. *Mallory*, 52 id. 501; *New Haven Young Men's Institute* v. *New Haven*, 60 id. 32–38; *LePage* v. *McNamara*, 5 Iowa, 124. The gift does not fall within the first four classes specified in our statute of charitable uses. It is not within the last class specified, for a charitable use to be within that class must be both public *and* charitable. If the use is public but not charitable, or charitable but not public, it is not a public and charitable use. The word "and" in this statute cannot be construed as meaning "or." *Mallory* v. *Mallory*, 72 Conn. 501; *Adye* v. *Smith*, 44 id. 460; *Jackson* v. *Phillips*, 14 Allen, 556; *Old South Society* v. *Crocker*, 119 Mass. 1, 24, 25;

*Atty. Gen.* v. *Rector, etc., of Trinity Church,* 9 Allen, 422, 439; *Coe* v. *Washington Mills,* 149 Mass. 543, 548; *Kent* v. *Durham,* 142 id. 216, 218, 219; *In re Clark's Trust,* L. R. 1 Ch. Div. 497; *Cunnack* v. *Edwards,* L. R. (1896) Ch. Div. 679. The gift in question is not charitable within the English statute of Elizabeth, as interpreted by our court. *Adye* v. *Smith,* 44 Conn. 71; Shelford's Law on Mortmain, p. 61, as cited in Fowler on Charitable Uses, Trusts and Donations, p. 37; 5 Reeves' Hist. of Eng. Law (Finlason), p. 223; *In re Clark's Trust,* 1 Ch. Div. 497; *Atty. Gen.* v. *Duke of Northumberland,* L. R. 7 Ch. Div. 746; *Morice* v. *Bishop of Durham,* 10 Vesey, 531; *Norris* v. *Thompson's Exrs.,* 19 N. J. Eq. 310; *Farnham* v. *Boyd,* 56 id. 774.

The gift to establish and maintain a mission or chapel upon the homestead is void. *Teele* v. *Bishop of Derry et al.,* 168 Mass. 341; *Bullard* v. *Shirley,* 153 Mass. 559; *Stratton* v. *Physio-Medical College,* 149 id. 505; *Fiske* v. *Atty. Gen.,* L. R. 4 Eq. 521; *In re Ovey,* 29 Ch. Div. 560; *In re White's Trust,* 33 Ch. Div. 231; *Clark* v. *Taylor,* 1 Drury, 642; Merwin on Eq. § 584; Whiteford on Charities, p. 54. The *cy pres* doctrine has not yet been adopted in this State. *White* v. *Fisk,* 22 Conn. 31, has never been overruled by our court.

BALDWIN, J. The Ladies' Seamen's Friend Society of New Haven, at the decease of the testatrix, was incorporated "for the purpose of aiding the destitute seamen who may frequent the port of said city, and of endeavoring to benefit the temporal and spiritual interests of such seamen as chance or commerce may bring to said port." The legacy in its favor, now in question, was given "for the aiding of destitute seamen." The mode of expenditure thus prescribed falls directly within the first of its corporate purposes.

The legacy amounts to over $150,000, and the appellants correctly claim that the limitation in the original charter, as to holding property "to an amount not exceeding fifteen thousand dollars," cannot fairly be restricted to the immunity from taxation, but applies generally to the capacity of the society to acquire.

If this objection be one that can only be taken by the State, the decree of probate should be affirmed; for not only has the State taken no adverse action, but it has so amended the charter as to remove the restriction.

If, on the other hand, the objection would otherwise be available to the heirs at law, it has been removed by what has taken place subsequent to the will.

The bequest was to a good charitable use, the aiding of a certain and definite class of the poor, and a power in the legatee to select the particular members of the class to be benefited was necessarily implied. *New Haven Young Men's Institute* v. *New Haven*, 60 Conn. 32, 41. The society was incorporated for accomplishing that and other purposes. It was therefore a suitable agency for the administration of the charity. It was to receive no beneficial interest. Whatever should come into its hands, would come clothed with a special trust. *Dexter* v. *Evans*, 63 Conn. 58, 60, 38 Amer. St. Rep. 336. If, then, it were legally incompetent to receive so large a legacy, the case would be simply one of the failure of a trustee. This in equity never involves a failure of the trust. When the difficulty arises from a refusal by the trustee appointed to act, it is necessary to have another one formally appointed by a court of equity or a court of probate. *Dailey* v. *New Haven*, 60 Conn. 314, 322. But here the trustee selected by the testatrix is ready to accept the office. It is and has always been unquestionably competent to receive so much of the legacy as does not make its entire property exceed $15,000 in value. It is not alleged that its property has ever attained that amount. The will creates two successive residuary estates. Everything not disposed of under the first eight articles became vested in Samuel E. Merwin as trustee, at the decease of the testatrix. The main object of this trust was to provide for the comfortable support of her brother as long as he should live, and for that purpose any part of the principal might be applied, should it be deemed necessary. Upon his death a second residue was to be formed. The bequest of $600 to St. Paul's Society was to be paid first. Her nephew and niece were to receive

$200 each. The homestead was to pass to St. Paul's Society. A fund was to be reserved for a small annuity. All these provisions first became operative in enjoyment at the death of Josephus Forbes. This is expressly stated in the tenth and thirteenth articles; necessarily implied in the devise of the homestead, for it had been specifically devised to the trustee with a view to its use as a home for Josephus; and fairly implied in the eleventh article, from the order in which it occurs in the will. It was this second residue, to be formed at the death of Josephus, which was the subject of the order appealed from. So long as Josephus lived it was uncertain what, if anything, would remain unexpended. It was also uncertain whether the incompetency of the Ladies' Seamen's Friend Society to take, if incompetent it were, would continue until his death. The interest of the heirs at law, therefore, during this period, if anything, was a contingent one, for it depended on uncertain and dubious events; and an equitable one, for the legal estate was vested in another.

While this state of things continued, the State intervened and made the Ladies' Seamen's Friend Society fully competent to accept such a trust. It could therefore have been appointed by a proper court, if there were no one to take and administer this residuary bequest, to receive it as trustee. *White* v. *Howard*, 38 Conn. 342, 366, 367.

But there was no occasion for such an appointment. The bequest did not constitute a trust in name, but only by construction of law. The society had become entitled to take as legatee, precisely as one to whom a legacy was left in his infancy, which has never been paid to his guardian, can claim it after arriving at full age. *Fellows* v. *Miner*, 119 Mass. 541; *American Bible Society* v. *Wetmore*, 17 Conn. 181, 187.

It is contended by the heirs at law that one of the purposes of the society, that of endeavoring to benefit the temporal interests of such seamen as chance or commerce may bring to the port of New Haven, is not a charitable one. If this be so, it is immaterial to the inquiry as to its capacity to receive a bequest given exclusively for another purpose which is charitable.

The reasons of appeal attack the validity of the bequest to St. Paul's Society for the purpose of erecting an episcopal chapel and sustaining a " mission " upon the homestead of the testatrix, on the following grounds : —

1. No such mission is now in existence and none may ever come into existence.

2. " It is and will be practically impossible to support or maintain a mission or church at the place and as provided in the first part of the fifteenth clause of the will. The designated place is unfitted geographically. There are and will be few, if any, persons that will attend or be ministered to by such mission or church, and the few that might attend or be ministered to by such mission or church would be better served and accommodated by other and surrounding protestant episcopal missions or churches.

" The testatrix's maiden name was Forbes, and her fortune disposed of by this will comes from the Forbes family living in the homestead referred to in this clause of the will ; and the substantial purpose of this provision of the said will was to create and maintain in perpetuity a monument to the Forbes name in this particular place.

" There never has been nor is there likely to be any call, demand, or occasion for a parish at the homestead of the testatrix referred to in said will, nor is the vicinity of said homestead a field for mission work, nor is there or will there, in all probability, be any one to attend said chapel, if erected; and said expenditure of money, as directed in the fifteenth clause of said will, would be a wasteful expenditure of trust funds.

" Said bequest to erect a chapel and maintain a mission in connection therewith is limited to a particular object and a particular institution. There is no general charitable intent, and it is not for general religious purposes, nor is there anything to indicate that the object of the testatrix was to benefit Saint Paul's Parish, or the parish to be created for the inhabitants of that portion of the city as a whole, and it is impossible to carry out the true intent of the testatrix."

To these allegations a demurrer has been interposed. This

admits the truth of such of them as can be deemed allegations of fact. It does not admit the truth of such of them as merely express the opinion of the appellants. As to these, the only admission is that the appellants entertain them. *Wadsworth* v. *Champion*, 1 Root, 393, 395; *State* v. *Sykes*, 28 Conn. 225, 228; *Woodruff* v. *New York & N. E. R. Co.*, 59 id. 63, 89; *State's Attorney* v. *Selectmen*, ibid. 402, 410; *Bradley* v. *Reynolds*, 61 id. 271, 279; *Connecticut Hospital for Insane* v. *Brookfield*, 69 id. 1, 4.

An opinion, however, may be such and so pleaded as to present a material issue. This is when it is a conclusion as to a material point that reasonably follows from certain premises, which either are established or may be a proper subject for proof.

In an equitable action by heirs at law to establish a resulting trust arising out of an attempted testamentary disposition, evidence may be adduced to show that such disposition directs what it is impossible to accomplish, provided this impossibility has been sufficiently averred.

Courts of probate, in ordering the distribution of a testate estate, may consider events, whether prior or subsequent to the death of the testator, so far as may be necessary to enable them to apply correctly the description in the will of the parties to be benefited, and effectuate the true intent of the whole instrument. For this purpose and to this extent they have full chancery powers. *American Bible Society* v. *Wetmore*, 17 Conn. 181, 187. They do not, however, have jurisdiction to make any final adjudication upon the validity or invalidity of testamentary trusts by reason of alleged difficulties in carrying them into execution, nor because they may deem them unwise in principle. *Chamberlin's Appeal*, 70 Conn. 363, 378.

The Superior Court on an appeal from probate has a wider jurisdiction, though it is one to be exercised with reserve and caution. *Mack's Appeal*, 71 Conn. 122, 133.

No objection having been taken by the appellees to the form of the proceeding by which the appellants have sought to present their objections to the validity of the devise and

bequest now in question, we think the reasons of appeal should be given the same effect as if they had been incorporated in the complaint in an equitable action to establish a resulting trust.

Thus treated, the allegations of existing facts are that there is no mission now in existence; that the name of the testatrix was Forbes ; and that the funds in dispute came from the Forbes family inhabiting her homestead. The material allegations or conclusions of fact are, that it is and will be impossible to maintain a mission church upon the homestead, the grounds stated being that, as a site, it is unfitted geographically, and that there are few, if any, to whom such institutions could usefully minister; that to establish them would be a wasteful expenditure of trust funds ; and that it is impossible to carry out the true intent of the testatrix.

That there is no such mission now in existence is obviously no reason why there never should be any. It was to supply the want of one that the bequest was made.

That it was a purpose of the testatrix that the chapel for which she provided should perpetuate the name and memory of her family at the place where they had their home is apparent from the will. If it were her controlling purpose, this would not tend to invalidate the bequest. The motive for doing a lawful act, whatever it may be, cannot make it an unlawful act. *McCune* v. *Norwich City Gas Co.*, 30 Conn. 521, 524 ; *Mack's Appeal*, 71 id. 122, 127, note, 135.

The conclusions of fact must be weighed and judged by the facts alleged to support them. *McCune* v. *Norwich City Gas Co.*, 30 Conn. 521.

Could then, had these reasons of appeal been traversed, evidence have been properly received to show that the site prescribed for the proposed chapel and mission is unfitted for the purpose ?

It would, of course, be of no avail to prove that a better one might have been selected. To overthrow the will in this regard proof would be necessary that the homestead was incapable of serving as a site for an episcopal chapel or mission. The history of the world and of all religions teaches

that churches, convents and temples have been maintained and frequented for ages in places remote from any center of population, and, on the other hand, that no city is so crowded with houses of worship that in the opinion of the adherents of some sect or denomination there is not a call for more.

It appears from the will before us that the homestead of the testatrix is in New Haven. If it be in the middle of it, she had a right to dedicate it to religious uses. If it be in the remotest outskirts, she had the same right. No uses can be more distinctively religious than the establishment of a mission church. It cannot be, in the nature of things, impossible that one may be successfully organized by St. Paul's Society to occupy a chapel built on the designated lot. The testatrix had a right to provide that the experiment should be tried. *Grand Prairie Seminary* v. *Morgan*, 171 Ill. 444, 49 Northeastern Rep. 516. Should it fail after a fair trial, an opportunity would then first arise for her heirs at law to bring before a proper court of equity proceedings to determine whether there was a resulting trust in their favor, or an occasion for the application of the doctrine of approximation. *Hayden* v. *Connecticut Hospital*, 64 Conn. 320, 325.

The averments " that there are few, if any, persons who will attend or be ministered to by such mission or church;" that these few would be " better served and accommodated by other and surrounding protestant episcopal missions or churches;" and that there is not and will not " in all probability be anyone to attend said chapel," taken together, import that there will be not none, but only a few to whom such a mission and church would minister, and that these could be better ministered to by similar institutions already existing in the surrounding territory. This is an admission that there are and will be some to take benefit from the charity, and therefore, that it is not impossible to maintain it. The testatrix has provided ample funds for the purpose of supporting religious worship at the place in question, and that the worshippers will be few does not prove that no good will be accomplished.

It was her " true intent " that the Forbes chapel should

be erected and a mission set up in connection with it. It does not appear that she looked forward to the gathering of a large congregation there. It does appear that she thought those who would worship there would, at first, be too few or too poor to meet the necessary expenses of maintaining such an establishment. In giving it the name of a mission church, she necessarily implied that it was to be a center of missionary effort to bring under Christian influences those who before were indifferent or hostile to them. The reasons of appeal, taken in connection with the will, show that it is not impossible to carry out this general intent.

The trust is for an object plainly charitable. General Statutes, § 2951. That the ministry of the gospel which it was designed to maintain was that of a particular denomination of Christians, and to be supported in a particular church edifice, is immaterial. *Conklin* v. *Davis*, 63 Conn. 377, 384; *Mack's Appeal*, 71 id. 122, 135. Every episcopal society is expressly empowered to receive any property to use "for maintaining religious worship according to the doctrine, discipline, and worship of said church, and for the support of the educational and charitable institutions of the same." General Statutes, § 2075. The property is given for immediate use, and not tied up for an indefinite period with an intervening estate created for the benefit of private individuals, as in *Jocelyn* v. *Nott*, 44 Conn. 55. The case is not one of those in which the trustee, being one whose personal agency is indispensable for carrying out the intended purpose, declines the trust, and when summoned into a court of equity declares its execution to be impracticable, as in *Teele* v. *Bishop of Derry*, 168 Mass. 341, 47 Northeastern Rep. 422. Nothing is stated in the reasons of appeal as having occurred since the death of the testatrix to change the situation as it existed when the will was made.

Under these circumstances, no material and traversable issue was presented by the averment that to establish the chapel and mission as directed by the will would be "a wasteful expenditure of trust funds."

The reasons of appeal attack the validity of the bequest

to "provide a home for ladies of advanced age, or infirm, who are or may hereafter become connected with the said Saint Paul's Church Society, or with the mission or the church that is to be established upon my homestead."

The grounds set up are these: It "is not charitable, but benevolent only. It is not public; it is indefinite. It is uncertain and unlawful in that it commits to the wardens and vestry an arbitrary power and discretion to appropriate the avails of said investment to purposes neither public nor charitable.

"There is no such home as is mentioned in said will of Betsey Bradley connected with or maintained or supported by said society or parish, nor is said society or parish engaged in the work of providing a home for ladies of advanced age, or infirm, or any other like home.

"The said Betsey Bradley has been for many years a member of said society or parish known as St. Paul's, and so associated with a number of other ladies in like manner connected with said society or parish, none of whom were either sick, or poor, or objects of charity, or within the class or classes or description of persons to whom or for whose use and benefit the said attempted gift and bequest could lawfully be made.

"No person could or can be or become connected with said society or parish except by the voluntary permission or action of said society or parish, or its officers and agents, and connection with said society or parish is dependent or contingent upon the fulfillment by the person or individual of certain theological tests and requirements, and the acceptance of certain theological dogmas, which said tests, requirements, and dogmas are peculiar, and confined to that particular ecclesiastical organization."

That the testatrix as a member of St. Paul's parish had been long associated with other ladies, also members of it, who stood in no need of a home, is obviously unimportant. It was not for such of her associates that she sought to provide. The terms of the bequest are entitled to a liberal construction in furtherance of the intent of the testatrix.

*Woodruff* v. *Marsh*, 63 Conn. 125, 136. Thus construed, they sufficiently imply that those only can be entitled to share in the benefits of this gift who have no home or no comfortable one. To give proper shelter to women in that condition who are either of advanced age or infirm, is a mode of relieving the poor, and so falls directly within our statute of charitable uses. General Statutes, § 2951. St. Paul's Society takes, itself, no beneficial interest. It is a trustee for a designated purpose, to give a home to the homeless. *White* v. *Howard*, 38 Conn. 342, 366.

That this relief is to be confined to members of one or two particular churches of a particular religious denomination, does not deprive it of its charitable character. It is not necessary, under the laws of Connecticut, to uphold a perpetual trust for the relief of the poor, that it should be in the strict sense a public one. The term " public," as used in that strict or technical sense, may be properly confined to gifts by which there is " some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons; " thus excluding those pointing out a particular " body, or a definite number of persons, ascertained or ascertainable," to receive control and enjoy their benefit, even when they are for what are of the nature of religious uses. *Old South Society* v. *Crocker*, 119 Mass. 1, 22, 23. In another and more natural sense, " public " is used, in respect to a testamentary gift, to distinguish it from a " private charity," so as to exclude gifts to selfish uses, and benefits conferred on particular individuals designated by name, or to be designated thereafter from a class separated from the rest of the world by some private or personal relations, having no respect to the good of others. Gifts of this latter description are not protected against the effect of the rule against perpetuities ; but that now in controversy is not one of them.

Whether the protection accorded by General Statutes, § 2951, to estates granted " for any other public and charitable use," is not equivalent to " for any other public or charitable use," is a question suggested and left undecided

in *Hamden* v. *Rice*, 24 Conn. 350, 354, 355. But, be that as it may, the benefit now in controversy is for one of the uses previously specified in the statute, and the legislature has not limited those uses by requiring them to be public in the technical sense as well as charitable. *Goodrich's Appeal*, 57 Conn. 275, 284; *Conklin* v. *Davis*, 63 id. 377, 383, 384; *Christ Church* v. *Trustees*, 67 id. 554, 565; *Mack's Appeal*, 71 id. 122, 135.

This bequest to St. Paul's Society is to be invested by its wardens and vestry " in such a manner as will best provide a home " for those of the class specified who may need such relief. The power to decide as to the best means of applying the funds for this purpose is impliedly given to the society. It inheres in the trust. *Woodruff* v. *Marsh*, 63 Conn. 125, 128; *Mack's Appeal*, 71 id. 122, 135.

That there is now no parish home of such a kind is immaterial. The society has ample power to undertake the establishment of such a charitable institution. General Statutes, § 2075. Nor does the will make it indispensable that those for whose relief a home is to be offered should be gathered under a common roof. The society is left free, should it deem best, to provide a home for each or any of them in a private family.

The Superior Court is advised to sustain the demurrer to the reasons of appeal.

No costs will be taxed in this court.

In this opinion the other judges concurred.