In the Matter of the Transfer Tax upon the Estate of
LUCY M. McCORMICK, Deceased.

THE AMERICAN BAPTIST PUBLICATION SOCIETY, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

**Tax — when legacy to a society incorporated as a missionary corporation is not subject to a transfer tax.**

A society incorporated under a special act of the Legislature (L. 1906, ch. 198) " for the purpose and object of promoting evangelical religion by means of the Bible, the printing press, colportage, Sunday schools, and other appropriate ways," is a missionary corporation exempted from taxation by section 221 of the Tax Law (Cons. Laws, ch. 60), and hence a legacy bequeathed to such society is not subject to a transfer tax.

*Matter of McCormick*, 148 App. Div. 936, reversed.

(Argued June 5, 1912; decided June 29, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 31, 1912, which affirmed a decree of the Orleans County Surrogate's Court assessing a transfer tax upon a legacy under the will of Lucy M. McCormick, deceased.

The facts, so far as material, are stated in the opinion.

*D. W. Perkins* for appellant. The appellant employs missionaries in carrying on its work, and is in every respect a missionary society. (*Matter of Mergantime*, 129 App. Div. 367.)

*Harold A. Blake* for respondent. The order of the surrogate herein assessing the transfer tax upon the legacy to the American Baptist Publication Society was correct and proper. (*Matter of Moore*, 90 Hun, 162; *Matter of White*, 103 N. Y. Supp. 688.)

HISCOCK, J. The testatrix, in connection with the settlement of whose estate this controversy arises, died in

September, 1908. She left a legacy to the appellant, the American Baptist Publication Society, and the question is whether this legacy is subject to a transfer tax.

The appellant was incorporated under a special law of this state (L. 1906, ch. 198) which, amongst other things, enacts as follows:

"Section 1. The American Baptist Publication Society, incorporated by the laws of the State of Pennsylvania, * * * for the purpose and object of promoting evangelical religion by the means of the Bible, the printing press, colportage, Sunday schools, and other appropriate ways, is hereby incorporated as the American Baptist Publication Society. * * *

"Section 3. The said corporation shall have power to receive, hold, take by donation * * * any real or personal property which has been, or may hereafter, be given, granted or devised to it * * * for the purpose stated in section one."

At the time the testatrix died, section 221 of article 10 of the Tax Law relating to taxable transfers, provided, "Any property devised or bequeathed * * * to any religious, educational, charitable, missionary * * * corporation * * * shall be exempted from and not subject to the provisions of this article." In order to come within this exemption from taxation upon its legacy the appellant must establish that it is a religious, charitable or missionary corporation and its character is to be determined by the provisions of the act under which it is incorporated. On this appeal it has attempted to sustain its position by the argument that it is a charitable organization. I think that its claim to exemption can be better and more naturally upheld on the theory that it is a missionary corporation.

As indicated by the act of incorporation, its purpose is "promoting evangelical religion by means of the Bible, the printing press, colportage, Sunday schools and other appropriate ways." Thus, its object is to encourage,

advance and forward the cause of religion. The means by which it is proposed to do this are the circulation of the Bible, the use of the printing press, the establishment of Sunday schools and colportage, which latter may be described as the sending forth of persons to labor for the spread of the gospel by distributing religious books and tracts. No definite territory is prescribed within which this object shall be pursued and these methods employed, but, so far as appears, they may be brought into world-wide activity.

I think clearly that these purposes establish the character of the appellant as a missionary corporation. A missionary is defined to be " one sent to preach the Gospel to the heathen or the poor; one labouring to spread the Gospel, especially among a neglected population in connection with some church or society " (Stormonth's English Dictionary); and, again, as a person "sent by ecclesiastical authority to labor for the propagation of his religious faith in a community where the church has no selfsupporting indigenous organization; hence, a propogandist." (Century Dictionary.)

In *Bulkeley* v. *Worthington Ecclesiastical Society* (78 Conn. 526) the question was whether the defendant society was a missionary society, and it was held not to be such; but in reaching this conclusion the court defined a missionary society, saying: " The terms 'missionary' and 'missionary society' are of common use, and have a well-accepted meaning. This meaning is the same whether the use is intended to be precise and technical, or merely that of every-day speech. By universal acceptance the word 'missionary,' whether as a noun or adjective, embraces not only the conception of a religious, charitable or educational work or worker, but also such a work done through philanthropic motives, for the welfare of others too poor, too unappreciative or too indifferent to do it themselves, and by persons supported or means furnished in part at least by some agency of which those

for whom the work is done do not form a sustaining part. The derivation of the word implies a sending, and so it is that in both technical and common speech the idea of a sending forth, a sending forth to the service of others, the doing of a work for others, is associated with its meaning. Sometimes it is used to characterize the agency sent; sometimes of the agency sending; but always there is associated with the notion of a benevolent service for others, that of such service sent, whether far or near, by those who maintain it to those who need it."

In England under the former statute with reference to charitable purposes (43 Eliz. chap. 4) corporations or associations doing work which we should rather define as missionary were classified as charitable and under this classification legacies to organizations engaged in work quite similar to that outlined in appellant's act of incorporation were sustained as made for charitable purposes. (*Matter of Maguire,* L. R. [9 Eq. Cas.] 632; *Matter of Clergy Society,* 2 Kay & Johnson, 615; *Thornton* v. *Howe,* 31 Beav. 14; *Matter of Lea,* L. R. [34 Ch. Div.] 528; *Attorney-General* v. *Stepney,* 10 Vesey, 21.) (See, also, *Eliot's Appeal,* 74 Conn. 586; *Mack's Appeal,* 71 Conn. 122; *Morville* v. *Fowle,* 144 Mass. 109.)

Under these definitions and authorities and the statement of its purposes, it seems so plain that the appellant is a missionary corporation that it is impossible by any extended argument to strengthen this conclusion. Its purposes and its instrumentalities are those universally recognized as appropriate to the cause of true religious and missionary work and it would be a very narrow and unnatural view which should lead us to view them otherwise for the purpose of imposing upon its resources the burdens of a legacy tax. For, if I am right that it is a missionary corporation, then it seems to be clear that it is entitled to an exemption. Not only does the plain language of the statute exempting missionary societies jus-

tify this conclusion, but in my opinion *Matter of Watson* (171 N. Y. 256) is in effect an authority for it.

In the latter case the question was involved whether bequests to a Young Men's Christian Association and to the Missionary Society of the Methodist Episcopal Church under the will of a testatrix who died in 1900, were exempt from taxation. The attempt was made to demonstrate that they were thus exempt because the beneficiaries were religious corporations. Judge WERNER, writing in behalf of the court and on a very thorough consideration of the statutes, held that a corporation devoted to missionary purposes was not a religious corporation within the meaning of the Tax Law providing for exemptions and which law at that time provided: "Any property heretofore or hereafter devised or bequeathed * * * to any religious corporation including corporations organized exclusively for Bible or tract purposes shall be exempt." (L. 1896, ch. 908, section 221, as amended L. 1901, ch. 458.)

In reaching this conclusion reference was made to section 4 of the Tax Law as it existed prior to 1900 and which provided that the real and personal property of a "corporation or association organized exclusively * * * for religious, Bible, tract, charitable, benevolent, *missionary*, hospital, infirmary * * * purposes" (L. 1896, ch. 908, section 4, subd. 7) should be exempt from taxation. It was conceded that if this provision had been in force at the time in question the legacies to the two corporations would have been exempt, but in 1900 an amendment had been made to the Tax Law which withdrew the exemption last quoted from legacies such as were then under consideration.

After the decision in the *Watson* case was made and in 1905 section 221 of the Tax Law relating to transfer taxes was so amended as to provide that the exemption formerly existing in favor of a religious corporation should be extended to "Any religious, educational, chari-

table, *missionary*, hospital or infirmary corporation."
Thus we see that by this amendment there was embodied
in the statute exempting legacies from taxation language
which, so far as the point now under discussion is con-
cerned, is just as broad as was that language of section 4
of the Tax Law above quoted, which it was conceded in
the *Watson* case would have been comprehensive enough
to exempt from taxation ·a bequest to the Missionary
Society of the Methodist Episcopal Church.    Thus, instead
of being an authority for the imposition of a transfer
tax in the present case, as seemed to be the opinion of the
courts below, the reasoning in the *Watson* case when
applied to the form of the statutes in force when the
present will took effect becomes an authority for the
contrary view.

The order of the Appellate Division and decree of the
surrogate should be reversed, and the bequest to the
appellant determined not to be taxable, with costs in all
courts.

GRAY, WERNER, WILLARD BARTLETT, CHASE and
COLLIN, JJ., concur; CULLEN, Ch. J., absent.

Order reversed, etc.