| 17 | 181 |
| 59 | 587 |
| 60 | 477 |

| 17 | 181 |
| 63 | 341 |

| 17 | 181 |
| 74 | 599 |
| 74 | 601 |

## THE AMERICAN BIBLE SOCIETY and others *against* WETMORE, executor of *Lois Ackley*, and others.

*A*, by her will, dated the 7th of *June*, 1839, after giving small legacies to her brother and sisters, devised the one half of the residue of her estate, real and personal, to The Bible Society for Foreign Distribution, and the other half to The Foreign Mission Society and The Tract Society, to be equally divided between them. The testatrix died, on the 20th of *April* 1841. *The American Board of Commissioners for Foreign Missions* was incorporated, by the legislature of *Massachusetts*, in 1812; *The American Bible Society*, by the legislature of *New-York*, on the 25th of *March* 1841; and *The American Tract Society*, by the same legislature, on the 26th of *May*, 1841. The two last-mentioned institutions existed at the date of the will, and had, long before, been organized as voluntary, unincorporated associations of individuals, under the same names and pursuing the same objects. All these societies were commonly known to the testatrix, and among the members of the church and congregation to which she belonged, by the names and descriptions by which the devisees respectively were designated in the will; and by those names and descriptions, she intended to designate said societies re-

*Litchfield,*
June, 1845.

The American
Bible Society
*v.*
Wetmore.

spectively. She was friendly to their objects, and contributed to their funds, during her life; and no other societies for the same objects were known to or supported by her, or by the members of such church and congregation. On an appeal from a decree of probate making distribution, it was held, 1. that a corporation having capacity to take by devise, may be designated by description, as well as by name; 2. that in this case, the several societies were sufficiently designated, as devisees by description; 3. that a court of equity will recognize and protect the interest of public charitable associations, not incorporated, in bequests and devises intended for their benefit; 4. that the principles of equity jurisprudence, are applicable to the distribution of the estates of deceased persons; 5. that consequently, *The American Bible Society* and *The American Tract Society,* which were not incorporated until after the execution of the will, as well as the *A. B. C. F. M.,* which was incorporated before, were entitled to take the devises intended for them respectively.

THIS was an appeal from a decree of the court of probate, accepting the distribution of the estate of *Lois Ackley,* deceased, brought by *The American Board of Commissioners for Foreign Missions, The American Bible Society* and *The American Tract Society;* the executor of *Lois Ackley,* and her heirs at law, being cited in to defend.

On the 7th of *June,* 1839, *Lois Ackley* made her last will and testament, substantially as follows: " I, *Lois Ackley,* of *Winchester,* &c., being of sound and disposing mind and memory, do make and ordain this my last will and testament, in manner and form following. To my brother, *John Alvord,* I give and bequeath four dollars; to my sister, *Esther Platt,* I give and bequeath four dollars; and to my sister, *Ann Tibbals,* I give and bequeath four dollars; and it is my will and intention, that each of my sisters be paid in wearing apparel, or bedding, or household furniture. And I do will and determine, that all my debts and funeral charges be duly and truly paid, by my executor, to be hereinafter named, and that he erect, or cause to be erected, a suitable monument at my grave out of my property that I may leave at my decease.

" The rest and remainder of my estate, both real and personal, that I may be in possession of, at my decease, I will and dispose of, as follows. The one half I will and bequeath to The Bible Society for Foreign Distribution; and the other half I will and determine to be divided equally between The Foreign Mission Society and The Tract Society.

" And I do also will and determine, that my executor retain a sufficient sum out of my estate to satisfy himself for

the execution of this my last will and testament. And I do constitute and appoint *Abel S. Wetmore* executor of this my last will and testament."

This instrument was executed as by law required to pass real estate, and, after the death of the testatrix, which happened on the 20th of *April*, 1841, was regularly proved and approved.

*The American Board of Commissioners for Foreign Missions* was created a body politic, by the legislature of the commonwealth of *Massachusetts*, in the year 1812. *The American Bible Society* and *The American Tract Society*, were incorporated, by the legislature of the state of *New-York*, in the year 1841; the former, on the 25th of *March*, and the latter, on the 26th of *May*. But the two last-mentioned institutions, though not incorporated until the times above specified, existed at the date of the will, and had long before been organized as voluntary, unincorporated associations of individuals, under the same names, and formed for, and engaged in, the same objects, and were established at the same place, *viz.* the city of *New-York*. The testatrix, at the time of making her will and at the time of her death, was, and long before had been, a member of the *Congregational* church in *Winchester*, and was friendly to the objects of said societies, and a contributor, during her life, to their respective funds. These societies were well known among the members of the church and congregation, to which the testatrix belonged, and received aid from that church and congregation, by frequent contributions; and no other societies for the same objects were known to, or supported by, them.

*The American Board of Commissioners for Foreign Missions*, at the date of the will and at the time of the death of the testatrix, was commonly known to her, and among the members of said church and congregation, by the name and description of "The Foreign Mission Society"; *The American Bible Society*, by the description of "The Bible Society for Foreign Distribution;" and *The American Tract Society*, by the description of "The Tract Society."

By the words "Foreign Mission Society" in the will, the testatrix intended to describe *The American Board of Commissioners for Foreign Missions*; and by the words in her will "The Bible Society for Foreign Distribution," she intended

*Litchfield,*
*June, 1845.*

The American
Bible Society
*v.*
Wetmore.

to describe the association then called " *The American Bi-ble Society*," and afterwards incorporated by that name ; and by the words " The Tract Society," she intended to describe the association then called " *The American Tract Society*," and afterwards incorporated by that name.

At the date of the will, in this case, sundry societies existed in the *United States*, which are the same societies, which are mentioned in the case of *Brewster* v. *McCall's* devisees, 15 *Conn. R.* 279, 280.

On these facts, the question as to the rights of the respective appellants to a distributive share under the will, was reserved for the advice of this court.

*Seymour* and *Woodruff*, for the appellants, contended, 1. That the devises to all the appellants were valid, they being sufficiently designated *by description.* The court admitted extrinsic evidence to show, and thereupon found, that the testatrix, by the words " The Foreign Mission Society," intended *The American Board of Commissioners For Foreign Missions ;* by the words, " The Bible Society for Foreign Distribution," she intended *The American Bible Society* ; and by the words " The Tract Society," she intended *The American Tract Society.* The legal and proper name of the object of the testator's bounty is not required in a devise ; but it is sufficient, if it be so designated as to be known. *Pow. Dev.* 493, 4. *Brewtser* v. *McCall's* devisees, 15 *Conn. R.* 274. *Ayres* v. *Weed*, 16 *Conn. R.* 291. The objection of a misdecription being removed, there is nothing left to preclude the *A. B. C. F. M.* from taking its share ; as this institution was incorporated before the date of the will.

2. That *The American Bible Society* and *The American Tract Society*, which existed as *voluntary associations* before the date of the will, but were not incorporated until after that time, (though the former was incorporated before the death of the testatrix,) may take, in equity ; and a court of probate, having chancery powers to a certain extent, is bound to give them the benefit of the devises. Grants, bequests and devises for *charitable purposes* have been holden good in chancery, though no grantee or devisee was then *in esse.* 2 *Sto. Eq.* 391, 2, 3. 412. 413. 415. *Burbank* v. *Whitney*, 24 *Pick.* 146. *Bartlett* v. *Nye*, 4 *Metc.* 378. *Coggeshall* v.

*Litchfield,*
June, 1845.

The American
Bible Society
*v.*
Wetmore.

*Pelton,* 7 *Johns. Ch. R.* 292. *Potter* v. *Chapin,* 6 *Paige* 369. 649. *Burr's* exrs. v. *Smith,* 7 *Verm. R.* 241. *Inglis* v. *The Trustees of the Sailor's Snug Harbour,* 3 *Pet. R.* 99.

3. That if the last position be not sustainable, still *The American Bible Society* is entitled to take, because when the will took effect, *viz.* at the death of the testatrix, that society was incorporated. It then had capacity to take. A devise to a person not in existence when the will was made, as to the first son of *A. B.,* who has then no son, is good, by way of executory devise. 1 *Sw. Dig.* 135. *Pow. Dev.* 337.

*Holabird,* for the heirs at law, after admitting that a person or corporation may be designated in a devise, by description, as well as by name, and waiving any question with regard to the sufficiency of the descriptions in this case, contended, 1. That *The American Bible Society* and *The American Tract Society,* being mere voluntary associations, at the time this will was made, were incapable of taking under it. In the first place, it is a well settled rule of law, that a devise to a voluntary association or community not incorporated, is void. *Pow. Dev.* 337. 1 *Sw. Dig.* 135. *Lockwood* v. *Weed,* 2 *Conn. R.* 287. *Greene* v. *Dennis,* 6 *Conn. R.* 392. *Brewster* v. *McCall's* devisees, 15 *Conn. R.* 294. 297. *Philadelphia Baptist Association* v. *Hart's* exrs. 4 *Wheat.* 1. *Parker* v. *Wood,* 9 *Mass. R.* 419. *Jackson* d. *Cooper* v. *Cory,* 8 *Johns. R.* 385. *Hornbeck* v. *Westbrook,* 9 *Johns. R.* 73.

Secondly, it is also a well settled rule, that where there is a present, immediate devise, there must be, at the making of it, a competent devisee and a present capacity to take. This is a devise *in præsenti,* to take immediate effect ; not to a corporation to be created *in futuro.* There is no executory devise to trustees, to take effect when they should become incorporated, as in the case of *Inglis* v. *The Trustees of the Sailor's Snug Harbour,* 3 *Pet. R.* 99. It is to depend upon no contingency ; there is no fact or circumstance indicating an intention to make a future disposition of her estate ; nothing in the character or nature of an executory devise.

Thirdly, it is also a well settled rule, that a will must be construed according to the intent of the devisor, *at the time of making it.* If so, the devisee is fixed, by the intent existing at the same time ; and to that time the enquiry is to be

directed, to ascertain whether there is a legal disqualification or want of capacity in the devisee to take. In this case, the finding of the court shows, that the testatrix intended that these associations or societies should take; but the law interposes, and declares, that they cannot take, not having been incorporated, at the time of the making of the devise.

Fourthly, this devise is to be governed by the adjudications of this state, whatever the laws of other states may be; and according to our decisions, these societies cannot take. See the authorities cited above.

2. That *The American Board of Commissioners for Foreign Missions* cannot take, because it appears from their charter, (*a*) that their capacity to take and hold estate, real and personal, is *limited;* and it does not appear, that there was, at the date of the will, or has been since, room, within the prescribed limits, for the accession of this estate. [Not much pressed.]

CHURCH, J.   The superior court has found, that the testatrix, by the language employed in this devise, intended, that these appellants should severally take under her will as devisees and legatees. This intention ought to be made effectual, if it can be consistently with legal principles.

The devise to *The American Board of Commissioners for Foreign Missions,* is good, under the appellation of "The Foreign Mission Society," because it is proved, that the intention of the testatrix was, that the *American Board* &c., which was incorporated in 1812, should take by this description. A corporation which has capacity to take lands, &c. by devise, as well as a natural person, may take as well by description, as by name. *Brewster* v. *McCall's* devisees, 15 *Conn. R.* 274. *Ayres* v. *Weed,* 16 *Conn. R.* 291.

The same principle is applicable to the other appellants, devisees under this will. But as to them, the heirs at law interpose another objection. It is, that when this will was executed, these societies, *The American Bible Society* and *The American Tract Society,* were unincorporated, and with-

_____

(*a*) The charter of this society was considered as a part of the case, but no notice of its provisions was taken by the superior court, in its finding, and no copy found its way into the reporter's hands.

out legal existence—mere voluntary associations. The will was executed on the 7th of *June*, 1839; *The American Bible Society* was incorporated on the 25th of *March*, 1841; and *The American Tract Society*, on the 26th of *May*, 1841.

By the principles of the common law, no title can be created, either by deed or devise, so as to vest a present legal interest in any person, natural or artificial, which has no legal existence.

We are not now upon the question what would be the effect, legal or equitable, of a devise to a mere monied or business association—a joint stock company, a manufacturing company, and the like; but whether a court of equity will recognise and protect the interests of public charitable associations?

Our courts of probate and superior courts, acting on appeals from probate, recognise the principles of equity jurisprudence, so far as they are necessary to protect and secure the rights of persons interested, and prevent the necessity of a direct resort to a court of chancery. The principles, therefore, which ought to govern a court of equity, should have been the rule of the court of probate in acting upon this distribution.

The technical rules of the common law, statutes of *mortmain*, and other restraining *English* statutes, operated very effectually to defeat the benevolent intentions of testators, and of grantors to public and private charities. To remedy what was supposed to be some of the evils of the former laws on this subject, the stat. 43 *Eliz. ch.* 4. was enacted. By this statute, and by the agency of the court of chancery under its provisions, many devises to charitable uses were rendered good and effectual. The spirit of this statute has not only been extending itself in the *English* courts, but into the legislation and courts of this country. By a provision of the statute law, enacted as early as 1702, it was declared, " that all gifts and grants, whether made by the legislature, towns or individuals, for the maintenance of the ministry of the gospel, or schools of learning, or for the relief of the poor, or for any other public and charitable uses, should forever remain and be continued to the uses &c. according to the true intent and meaning of the grantor." We think the obvious effect of this enactment would protect the devises in

*Litchfield,*
*June, 1845.*

The American
Bible Society
*v.*
Wetmore.

*Litchfield,*
June, 1845.
—————
The American
Bible Society
*v.*
Wetmore.

question, without resort to the additional authority of adjudged cases.

But we believe it is a doctrine now universally admitted, by the equity courts of this country, that a devise for a public charitable purpose, shall not fail of effect, for want of a devisee then capable of taking the legal estate ; and that to protect and perpetuate such charity, the legal estate will be considered, either as remaining in abeyance, or vesting in the heirs of the testator, as trustees for the persons beneficially interested. 2 *Sto. Eq.* 391. 412. 413. 415. 422. *Chatham* v. *Brainard*, 11 *Conn. R.* 60. *Pawlet* v. *Clarke*, 9 *Cranch* 292. *Beatty* & al. v. *Kurtz* & al. 2 *Pet.* 566. City of *Cincinnati* v. *White's* lessee, 6 *Pet* 4.32. *Potter* v. *Chapin*, 6 *Paige* 639. *Coggeshall* v. *Pelton*, 7 *Johns. Ch. R.* 292. *McGirr* v. *Aaron*, 1 *Penns. R.* 49. *Burbank* v. *Whitney*, 24 *Pick.* 146. *Burr's* exrs. v. *Smith*, 7 *Verm. R.* 241. *Bartlett* v. *Nye*, 4 *Metc.* 378. *Witman* v. *Lex*, 17 *Serg. & Raw.* 88. *Ang. & Ames*, 100. Upon the principle now recognised, it is quite immaterial, whether *The American Tract Society* was incorporated before or after the death of the testatrix. We are aware, that there are some cases comparatively modern, which seem to oppose or restrict the doctrine which we here sanction.

The case of *Lockwood* v. *Weed*, 2 *Conn. R.* 287., though relied upon by the heirs at law, is not opposed to the claims of the appellants in this case. It was not holden there, that a devise to a church for the support of the gospel, was ineffectual ; but only, that the devise, in that case, was to the church, and not to the congregation or society, which was the party claiming. The case of *Green* v. *Dennis*, 6 *Conn. R.* 293. was an action at law, in which the only question was, where was the legal title ? A remark of *Storrs*, J. in *Brewster* v. *McCall's* devisees, 15 *Conn. R.* 294. was made only in reference to the same question. The case of *The Philidelphia Baptist Association* v. *Hart's* exr., 4 *Wheat.* 1. seems to have been decided upon what was supposed to be the peculiar state of the law of *Virginia* on this subject. The entire argument of the chief justice is based upon the idea, that the stat. of 43 *Eliz.* alone, gave to the courts a power to sustain these charitable devises, in opposition to the

*mortmain* and other subsequent restraining acts; and because that statute had been expressly repealed in *Virginia*, as late as 1792, it was supposed that all the power which might before have been exercised under it, was expressly taken away. Whether this was so or not, we shall not enquire. No such reasons exist here, where we have, by our statute of 1702, virtually reënacted the statute of *Elizabeth*; nor in other states to whose decisions we have referred, and where these charities have been sustained.

*Litchfield,*
June, 1845.

The American
Bible Society
*v.*
Wetmore.

To carry out these charitable testamentary grants, when they are promotive of important public and benevolent purposes, is in accordance with the enlightened and philanthropic spirit of the age. With such a spirit the jurisprudence of the country should keep pace. If there be any well grounded fear, that the patrons of these charities may be made the dupes of designers; or, that deserving heirs may be made to suffer, to gratify a bigoted or an ostentatious pietism; it will be for the legislature, and not for the courts, to foresee and prevent the evil.

We advise, that the decree of the court of probate accepting the distribution of the estate of *Lois Ackley*, be reversed and annulled.

In this opinion the other Judges concurred, except STORRS, J. who was absent.

Judgment for appellants.