WILLIAM B. ECCLES vs. RHODE ISLAND HOSPITAL TRUST COMPANY ET ALS.

Second Judicial District, Norwich, April Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The misdescription of a charitable institution as "a corporation," in a bequest to it, is not fatal if the legatee, as in the present case, is fully identified.

The legal incapacity of a charitable institution to take the title to a bequest made to it is not fatal. Such incapacity may be cured by subsequent legislation, and if not, a trustee should be appointed by the Court of Probate to hold such title and carry the charitable gift into effect, pursuant to our statute (§ 4026) of charitable uses.

While a charitable bequest does not create a trust in any strict legal sense, the statute does require that the gift shall be devoted to the uses for which it was given, and our courts are bound to see that the statutory obligation thus created does not fail for want of a trustee.

A bequest in aid of friendless and destitute children in a Home owned and conducted by a charitable corporation as one of its activities, is a valid charitable bequest, whether of income or of both principal and income.

There is no legal distinction or difference between a gift to a charitable corporation, and one to such corporation "for its general uses and purposes"; for in either case the gift must be appropriated to such objects and to such only as are authorized by the donee's charter.

If the beneficiary has no charter, its general uses and purposes may be shown by long continued practice in carrying on a charity in substantial compliance with the written requirements of its founder; and if the testator knew of and was deeply interested in this specific charity, it would necessarily be presumed that his intent was that his bequest should be used for that object and that only.

Extrinsic evidence is always essential to identify a legatee, and the mere identification may necessarily characterize the legacy as a charitable bequest.

As incident to its statutory power to order distribution of an estate, the Court of Probate must necessarily ascertain who the legatees are and in so doing must pass upon the validity of legacies as charitable bequests.

In the present case the testator also made bequests to the United Workers, a corporation in his town, which owned and conducted the Rock Nook Children's Home. *Held* that these bequests did not exclude an intent upon his part to make the gifts to the Children's Home, inasmuch as the latter were for the specific purpose of aiding the friendless and destitute children in the Home, while the bequests to the United Workers were for the general purposes of that corporation.

Argued April 26th—decided June 27th, 1916.

APPEAL from an order and decree of the Court of Probate for the district of Norwich appointing a trustee to receive and hold bequests made by John Eccles of Norwich, deceased, to the Rock Nook Home for Children, taken by the plaintiff—the decedent's brother and sole heir at law—to the Superior Court in New London County, *Shumway, J.,* and reserved by it, upon an agreed statement of facts, for the advice of this court. *Judgment confirming probate decree advised.*

John Eccles, late of Norwich, died testate, leaving a considerable estate. By the thirteenth clause of his will he made the following bequests, among others:—

"(e) To the Rock Nook Home for Children, a corporation located in said City of Norwich, the sum of Fifty Thousand Dollars ($50,000), the principal thereof to be invested by said corporation and the income thereof to be used for its general uses and purposes.

"(f) To the United Workers, a corporation located in the City of Norwich, the sum of Twenty-five thousand dollars ($25,000), the principal thereof to be invested by said corporation and the income thereof to be used for its general uses and purposes. . . .

"(p) All of the rest, residue and remainder of said trust estate in the possession of said trustee or trustees

at the time of the death of my said wife, said trustee or trustees shall pay over to said person or persons and in such amounts as my said wife, Nellie Moore Eccles, shall, by her last will and testament, or instrument in the nature of a last will and testament, direct and appoint and in case my said wife shall leave no such last will or instrument, or leaving such will or instrument shall fail to exercise such power of appointment, then and in that case, said trustee or trustees shall convey, transfer and pay over two-thirds of the remainder of said trust estate to said Rock Nook Home for Children, and one-third thereof to said United Workers, discharged of said trust."

The wife of John Eccles died intestate before his decease, and the bequests of the residue of the trust fund are now payable. There is not and never has been any corporation by the name of Rock Nook Home for Children, or by any name of like sound or meaning, in the State of Connecticut. But there is and has been a home for friendless and destitute children which is and has been commonly known to the public in the town of Norwich by the name Rock Nook Children's Home. This Home is owned by the United Workers of Norwich, a corporation duly organized according to law. It originated in a gift made to the United Workers by Moses Pierce, and confirmed by a deed made on April 4th, 1878, conveying to the United Workers the premises formerly occupied by Moses Pierce as his residence, "to be used and occupied as a home for friendless and destitute children unable to care for themselves, and without friends to care properly for them. . . . The said corporation is to decide what children are to be admitted to this home, the length of time they shall remain and the conditions and regulations to which they shall be subjected."

Since that time the United Workers has maintained

and operated the Rock Nook Children's Home in accordance with the terms and conditions of the Pierce deed, and has received various gifts for the benefit of the Home, and the same has been practically maintained out of the income from invested funds given for that special purpose and separately accounted for on the books of the United Workers. The management of the Home has been entirely in the hands of a standing committee for the Rock Nook Children's Home, which, under the constitution of the United Workers, has power to elect its own members subject to the approval of the executive committee.

John Eccles, through his contributions, was a member of the corporation of the United Workers, but never held office in it or served on its committees. He was often consulted by individual members of the standing committee for the Rock Nook Children's Home, and consulted with them as to finding places in the Home for children who resided in the districts with which he was especially familiar. He was never inside of the Home, but took great interest in the work carried on there. He did not know that it was a branch of the work of the United Workers.

On the application of the Rhode Island Hospital Trust Company and the United Workers, the Court of Probate for the district of Norwich appointed the United Workers as trustee to receive and hold the bequests to the Rock Nook Home for Children, described in the will as a corporation located in the town of Norwich. From this decree the brother and sole heir at law of the testator, who received by the will a small pecuniary legacy, appeals.

*James C. Collins* of Providence, Rhode Island, and *Arthur M. Brown*, for the defendant, the Rhode Island Hospital Trust Company, Executor.

*John P. Huntington,* for the defendant The United Workers of Norwich.

*Hadlai A. Hull, Charles Welles Gross* and *William H. Shields, Jr.,* with whom was *William H. Shields,* for the plaintiff.

BEACH, J.   It is apparent from the terms of the will, interpreted in the light of the agreed statement of surrounding facts, that the testator intended these bequests for the institution known to him as the Rock Nook Home for Children, located in Norwich, in whose work he was greatly interested.   This is not seriously disputed.

It is pointed out, however, by the appellant, that since this action is an appeal from a decree of probate appointing a trustee, the only questions properly before us are whether, by the terms of these bequests, a trust is created, and if so, whether the Court of Probate had power, under the circumstances, to appoint a trustee.

On principle and authority we think both of these questions must be answered in the affirmative.   The misdescription of the Children's Home as a corporation is not fatal, because the legatee is fully identified notwithstanding the misdescription.   Neither is the legal incapacity of the Children's Home to take the bequests fatal.   In several cases of charitable bequests where the real beneficiaries were definitely ascertained and the primary legatee was the almoner of the testator's bounty, this court has refused to declare the gifts void merely because of the incapacity of such a legatee to take.   In *American Bible Society* v. *Wetmore,* 17 Conn. 181, a bequest to the Tract Society was sustained, although the intended legatee, The American Tract Society, was a mere voluntary association, "unincorporated and without legal existence," as the law then stood; and the payment of the legacy to a corporation

of the same name organized after the testator's death was approved. In *Eliot's Appeal*, 74 Conn. 586, 51 Atl. 558, the gift was to the Ladies' Seamen's Friend Society, a corporation which, by the limitations of its charter, was unable to take so large a bequest, until the legislature, after the death of the testatrix, amended its charter so as to authorize it to do so.

The principle upon which these gifts were sustained, although the primary legatee was at the testator's death incapable of taking them, was stated as follows by CHURCH, J., in *American Bible Society* v. *Wetmore*, 17 Conn. 181, 188: "But we believe it is a doctrine now universally admitted, by the equity courts of the country, that a devise for a public charitable purpose, shall not fail . . . for want of a devisee then capable of taking the legal estate; and that to protect and perpetuate such charity, the legal estate will be considered, either as remaining in abeyance, or vesting in the heirs of the testator, as trustees for the persons beneficially interested." And again, by BALDWIN, J., in *Eliot's Appeal*, 74 Conn. 586, 598 (51 Atl. 558): "The bequest was to a good charitable use, the aiding of a certain and definite class of the poor, and the power in the legatee to select the particular members of the class to be benefited was necessarily implied. *New Haven Young Men's Institute* v. *New Haven*, 60 Conn. 32, 41 [22 Atl. 447]. The society was incorporated for accomplishing that and other purposes. It was therefore a suitable agency for the administration of the charity. It was to receive no beneficial interest. Whatever should come into its hands, would come clothed with a special trust. *Dexter* v. *Evans*, 63 Conn. 58, 60, 38 Am. St. Rep. 336 [27 Atl. 308]. If, then, it were legally incompetent to receive so large a legacy, the case would be simply one of the failure of a trustee. This in equity never involves a failure of the trust."

From these expositions of the underlying principles involved, it is clear that if the incapacity of the legatees in question had not been cured, trustees might properly have been appointed in both of these cases to carry the charitable bequests into effect.

On the other hand, the appellant relies upon *Pierce* v. *Phelps,* 75 Conn. 83, 86, 52 Atl. 612, as authority for the proposition that a gift to a charitable corporation to aid in carrying out the purposes for which it was organized does not create a trust in any legal sense; and it is argued from that premise, that the incapacity or refusal of such a legatee to accept the gift will not present a case of the failure of a trustee. It is quite true that a charitable bequest does not create a trust in any strict legal sense. Such bequests are matters of public as distinguished from private concern. They are, however, governed by our statute of charitable uses (§ 4026), and its positive declaration that such gifts shall be and "remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever," imposes on the courts, whenever it appears that the gift is for an object which the law recognizes as a public charitable use, the duty of seeing that the statutory trust thus created does not fail for want of a trustee.

We think the bequests to the Rock Nook Home for Children are good charitable bequests. The object is to aid a certain and definite class of destitute children, and the power to select the particular beneficiaries is vested in a standing committee of the United Workers for the Rock Nook Children's Home. If the Home had been actually incorporated for the purposes indicated in the agreed statement of facts, the charitable character of the bequest of $50,000, "the principal thereof to be invested by said corporation and the income thereof

to be used for its general uses and purposes," could not be questioned. The residuary bequest is just as clearly a charity. The intention that the residuary gift also shall be for the general uses and purposes of the Home is as apparent as if that intent were expressed for the second time; and the only difference is that the principal as well as the income of the residuary bequest may be expended for such purposes. In *American Bible Society* v. *Wetmore,* 17 Conn. 181, the bequest of the residuary estate was in the following words: "The one half I will and bequeath to The Bible Society for Foreign Distribution; and the other half I will and determine to be divided equally between The Foreign Mission Society and the Tract Society." Yet there was no question but that the gifts were for the charitable purposes of the several primary legatees. The reason for this is very well stated by Stevens, V. C., in *American Bible Society* v. *American Tract Society,* 62 N. J. Eq. 219, 220, 221, 50 Atl. 67: "By necessary implication a gift to the society is a gift in trust for those [its] proper objects. . . . To say that where the devise is, without more, to the society, it is invalid, but that where it is to the society to promote its proper objects (without specifying them), it is valid, is quite at war with legal principle and common sense. And for this obvious reason: The society is bound to use the property given to it for such objects, and for such objects only, as are mentioned in its constitution. Any other use would be illegal. Hence, to give to the *society,* is to give in trust for the objects of the society."

It is objected that in the present case the general uses and purposes of the Children's Home cannot be ascertained, because it is without a charter and without a constitution; but the agreed statement of facts answers this objection by showing that for many years the charity known by the name of Rock Nook Children's

Home has been carrying on a home for friendless and destitute children in substantial accordance with the requirements stated in the Moses Pierce deed. Its general purposes and uses were in point of fact limited to the definite object of aiding destitute children, as the testator knew; and the necessary presumption of law is that according to the true intent and meaning of the testator these bequests were to be used for that object and for no other.

It is also objected that the agreed statement of facts was made for the sole purpose of showing the surrounding circumstances, and that it cannot be used to establish the charitable nature of the bequests. This objection is too narrow. Extrinsic evidence is always necessary to identify legatees; and the mere identification of this legatee necessarily characterizes the legacies as charitable bequests, as was also the case in *American Bible Society* v. *Wetmore*, 17 Conn. 181.

We think the Court of Probate had power to appoint a trustee in this case. It had power to ascertain the legatee, and to pass upon the validity of these bequests as charitable bequests, because these determinations were necessary incidents of its statutory power to order distribution of the estate. *Eliot's Appeal*, 74 Conn. 586, 601, 51 Atl. 558. Upon determining that the bequests were valid charitable bequests, and that the primary legatee was incapable of taking, it had power, under § 249 of the General Statutes, and it was its duty, under § 4026 of the General Statutes, to appoint a trustee to take and hold the bequests for the purpose of carrying the statutory trust into effect.

The argument that the gifts to the United Workers *eo nomine* exclude any intent to make additional gifts to the Rock Nook Children's Home, when it is shown that the latter is maintained and operated by the United Workers, is unsound. The gifts to the United

Workers are for the general purposes of that corporation, and the gifts to the Rock Nook Home are for one of its special charitable activities. There is no reason to suppose that the testator would not have made these latter bequests had he known of the connection between the United Workers and the Children's Home.

These considerations dispose of the entire case. The first, second, third, fourth, fifth and sixth questions formulated in the reservation are answered in the affirmative.

The Superior Court is advised to enter judgment affirming the decree of the Court of Probate.

In this opinion the other judges concurred.