ALBERT SHULMAN *v.* CONNECTICUT BANK AND TRUST
COMPANY ET AL., COEXECUTORS (ESTATE OF
JOSEPH L. SHULMAN), ET AL.
(4084)

SPALLONE, DALY and BIELUCH, Js.

Argued October 10—decision released December 10, 1985

*Ira B. Grudberg,* with whom, on the brief, was
*Jonathan Katz,* for the appellant (plaintiff).

*Warner K. Depuy,* for the appellee (named
defendant).

*David E. Ormstedt,* assistant attorney general, with
whom, on the brief, was *Joseph I. Lieberman,* attor-
ney general, for the appellee (defendant Joseph I.
Lieberman).

BIELUCH, J. The plaintiff appealed to the Superior Court from a decision of the Probate Court for the district of Hartford ordering the distribution of the decedent's residuary estate to The Joseph L. Shulman Foundation, a charitable trust. After a trial de novo, the Superior Court affirmed the order of distribution. The plaintiff, the decedent's estranged brother, has appealed from that judgment to this court.

The facts leading to this litigation are not in dispute. The decedent, Joseph L. Shulman, was an attorney residing in Hartford and a substantial holder of real estate and other interests in the local area. On December 13, 1965, he executed his last will and testament. After making numerous specific bequests, he left the residue of his estate, under clause fourteen, to the Beatman Foundation, Inc., a nonprofit Connecticut corporation, located in South Norwalk. Approximately one year later, on December 30, 1966, the decedent created The Joseph L. Shulman Foundation as an irrevocable charitable trust, declaring himself to be the trustee. This foundation subsequently qualified as a tax exempt organization under Internal Revenue Code § 503 (c) (3).

Paragraph seven of the Shulman Foundation trust declaration reads as follows: "The trustee is authorized if he desires to do so to organize a corporation under the laws of the State of Connecticut, or any other state of the United States. The corporation so organized shall be a charitable organization and shall be organized and operated for the same general purposes as this trust. The name of such corporation shall include the settlor's name. Upon the organization of such corporation, the trustee may transfer a portion or all of the trust fund to such corporation." The failure of the trustee to organize such a corporation for the foundation is at the heart of the present litigation.

On May 16, 1972, the decedent executed a codicil to his last will and testament in which he revoked article fourteen and substituted the following in its place: "FOURTEENTH: All the rest, residue and remainder of my estate, as well as real and personal property, wheresoever situated, I give, devise and bequeath to THE JOSEPH L. SHULMAN FOUNDATION, INC., a non-profit Connecticut corporation, with its principal office in the City of Hartford, State of Connecticut, provided, however, that in the event that said bequest so bequeathed under the provisions of this Article 'FOURTEENTH' of this my Will should not be allowed as a deduction in computing the value of my taxable estate (both Federal and State), then I direct that said residuary estate shall be distributed by my Executors and Trustees to such other charitable, educational or other eleemosynary institutions as my said Executors and Trustees shall determine in their absolute discretion, and I give, devise and bequeath the same accordingly." In brief, the codicil merely substituted The Joseph L. Shulman Foundation, Inc., "a non-profit Connecticut corporation," as the residuary legatee for the Beatman Foundation, Inc., previously identified in the original will as "a non-profit Connecticut corporation," which identification may have misled the attorney who drew the codicil.

Four years after the execution of the codicil, on June 24, 1976, the testator died. The decedent's will and codicil were admitted to probate in the Probate Court for the district of Hartford. After a hearing on the settlement and allowance of the administration account, the court, on August 25, 1982, made, inter alia, the following findings, order and decree: "that the decedent intended to make a charitable distribution of the rest, residue and remainder of his estate; that The Joseph L. Shulman Foundation is a charitable organization; that the intent of the decedent, as expressed

in the Codicil and Will of the decedent, will be fulfilled by ordering distribution to The Joseph L. Shulman Foundation; and, that therefore, in accordance with the Codicil to the Will of the decedent, the sole distributee of the rest, residue and remainder of said estate is The Joseph L. Shulman Foundation of Hartford, Connecticut. Said account is accordingly approved and allowed, and it is ORDERED that the rest, residue and remainder of said estate be transferred and paid over to the distributee above named according to law and the provisions of the Will of said decedent.''

The plaintiff, who was expressly disinherited by the will, appealed from this order and decree. After a trial, the court upheld the Probate Court decision. The plaintiff has now appealed further to this court.

The principal claims of the plaintiff are that the court erred (1) in reforming the will to designate a new beneficiary to take a void bequest, and (2) in admitting the scrivener's testimony to establish a draftsman's error in the codicil. It is the plaintiff's contention that the residuary estate should pass by intestacy for lack of an existing legatee or distributee. Since there was no qualifying corporate entity known as The Joseph L. Shulman Foundation, Inc., in existence upon the testator's death, he contends that the legacy lapsed. The naming of the unincorporated trust of similar name as distributee by the probate and trial courts, therefore, was an illegal reformation of the decedent's will. In substance, the plaintiff maintains that the issue concerns not a misdescription of a legatee, but a nondescription, the description of a nonentity, leaving the residue of the estate for distribution by intestacy. The defendant contends, to the contrary, that the court properly found an unintentional misdescription only and did not reform the testator's will and codicil.

Over the objection of the plaintiff, the trial court heard testimony from the attorney who drew the codicil on May 16, 1972, shortly before the decedent left on the same day for a visit to Israel. The attorney testified that the decedent and he had been law school classmates and had a friendly, not professional, relationship. In the early part of May, 1972, he was asked to prepare the codicil. It was then that he saw the original will. He further testified that "the primary purpose of the codicil was to eliminate the Joseph Beatman Foundation" and to substitute for it "The Shulman Foundation as he knew it and as I knew it." Admitting that he had "made a scrivener's mistake" in misdescribing the foundation, there was no doubt in his mind "that this bequest is to no one but The Shulman Foundation without the INC." On the basis of the draftsman's testimony, the trial court found that the "decedent's true intent was to benefit the existing Foundation, and that [Attorney] Korn erroneously misdescribed the Foundation as a corporation when it in fact was and is a trust."

There is a well established presumption against the intent of a testator to leave any part of his estate intestate and courts will endeavor to avoid a construction of a will resulting in partial intestacy. *Wallace* v. *Wallace,* 103 Conn. 122, 134, 130 A. 116 (1925). The designation by the testator in this case of charitable organizations as contingent residuary beneficiaries of his estate after designating a charitable organization as the primary residuary beneficiary is expressive of his intent to dispose of the entire estate without intestacy. By primary or contingent designation, the residue was to go to charity. He appeared to close all doors of his estate to intestacy, even to the extent of specifically excluding, in paragraph thirteen of the will, the plaintiff and other heirs not otherwise named as legatees.

By his codicil, the testator expressed his belief that The Joseph L. Shulman Foundation, Inc., did then, and would continue to, exist. Article fourteen of the will in its original form provided for the contingent charitable beneficiaries to receive the residuary estate "if said BEATMAN FOUNDATION, INC. ceases to exist . . . ." This contingency was not retained in article fourteen, as amended by the codicil substituting THE JOSEPH L. SHULMAN FOUNDATION, INC., as the primary charitable beneficiary of the residue of the estate. The intent expressed thereby is that he knew of what he spoke—a charity which he created in his own name, which he knew existed and which he knew would continue to exist because he created it that way. Paragraph seven of the trust declaration, which authorized the trustee to organize a corporation, specifically provided that "[t]he name of such corporation shall include the settlor's name." His sole intent was to fund and perpetuate The Joseph L. Shulman Foundation then in existence, whether incorporated or not.

Our reports record that other legacies to misnamed or misdescribed beneficiaries have been allowed by the courts. In those cases, as here, extrinsic evidence was permitted for the identification of the proper legatees. The rule concerning the use of extrinsic evidence is that it is admissible to identify the devisee or legatee named or the property described in a will, or to make clear the doubtful meaning of language used in a will. On the other hand, it is never admissible for the purpose of showing an intention not expressed in the will itself, or for the purpose of proving a devise or bequest not contained in the will. *Connecticut Junior Republic* v. *Sharon Hospital,* 188 Conn. 1, 9, 448 A.2d 190 (1982).

*Brinsmade* v. *Beach,* 98 Conn. 322, 119 A. 233 (1922), was a suit to determine the construction of a will reserved to the Supreme Court for its advice upon the facts alleged in the complaint. By clause three, the

testatrix gave and bequeathed "to the Ladies Society of Stratford two hundred dollars the interest to be used yearly to fit missionary boxes." There was no society known by that name at the time of the will or death. The Women's Missionary Society of the Congregational Church was, however, in existence. The testatrix had been its president for many years. She often stated that she intended to leave it a bequest. The court's answer to the reservation was as follows: "From these facts the identification is sufficiently clear, that the testatrix intended by this designation the society known as the 'Women's Missionary Society of the Congregational Church.' If the description of the legatee can be ascertained by extrinsic evidence to denote the society meant by the testator and to distinguish it from all others, the bequest will be sustained and the surrounding circumstances may be inquired into in order to ascertain the testator's intent. *Brewster* v. *McCall's Devisees,* 15 Conn. 274, 291 [1842]." *Brinsmade* v. *Beach,* supra, 332–33.

The trial court relied upon *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 98 A. 129 (1916), in affirming the order of the Probate Court. *Eccles* was also a reservation for the advice of the Supreme Court upon an agreed statement of facts. In that case the testator made charitable bequests to "the Rock Nook Home for Children, a corporation located in said City of Norwich." There was not and never had been any corporation by the name of Rock Nook Home for Children, or by any name of like sound or meaning, in the state. There was, however, a home for destitute children in Norwich commonly known to the public by the name of "Rock Nook Children's Home," owned by the United Workers of Norwich, a corporation. The decedent had been interested in the work of the home and sought places there for children in his district. The Probate Court appointed the United Workers as trustee

for the bequests made to the Rock Nook Home for Children. The decedent's brother and sole heir appealed from that decree. In advising that the probate decree be confirmed, the court held: "It is apparent from the terms of the will, interpreted in the light of the agreed statement of surrounding facts, that the testator intended these bequests for the institution known to him as the Rock Nook Home for Children, located in Norwich, in whose work he was greatly interested. . . . The misdescription of the Children's Home as a corporation is not fatal, because the legatee is fully identified notwithstanding the misdescription." Id., 596.

Another reservation for construction of a will involving the misdescription of a legatee was *Weed* v. *Scofield,* 73 Conn. 670, 49 A. 22 (1901). In the will involved there, a bequest was made to the "Institution for the Relief of the Ruptured and Crippled in the City of New York." There was no institution or corporation in New York known by that name. There existed, however, a corporation named "The New York Society for the Relief of the Ruptured and Crippled." All parties agreed that this was the institution which the testator intended to designate. The court found, without discussion, that the latter was the legatee intended by the testator in the will describing the former.

Still an earlier reservation concerning the misdescription of a charitable remainderman was *American Bible Society* v. *Wetmore,* 17 Conn. 181 (1845). In that case, the trial court made the following findings of fact before seeking the advice of the Supreme Court: a residuary bequest was made to the Foreign Mission Society; The American Board of Commissioners for Foreign Missions was commonly known to the testatrix, and to the members of the church and congregation, by the name and description of the "Foreign Mission Society"; and by the words "Foreign Mission Society" the testatrix

intended to describe The American Board of Commissioners for Foreign Missions. Id., 182–83. Finding this intention proven, the Supreme Court held that "[t]he devise to *The American Board of Commissioners for Foreign Missions,* is good, under the appellation of 'The Foreign Mission Society.' " (Emphasis in original.) Id., 186.

A misdescription has been called a latent ambiguity that is explainable by parol evidence of the testator's intention. Since the object is to discover the intention of the testator, the rule is well settled that any testimony is admissible for that purpose which is relevant under the general principles of evidence. Any fact or circumstance, which, from experience or observation, may fairly be presumed to have had an influence on his mind in inducing him to make the bequest or legacy, is admissible to prove his intention. *Ayres* v. *Weed,* 16 Conn. 291, 302 (1844). *Ayres* was an action of ejectment for land brought by the heirs at law against the defendants holding title under the Protestant Episcopal Society of New Canaan as devisee of the testator. The residue of the estate was willed to the Protestant Episcopal Church in New Canaan. The Protestant Episcopal Society was incorporated as a voluntary association. The terms "church" and "parish" were used indiscriminately with respect to this denomination and in the same sense as the term "society." There was also another body of persons, not incorporated, composed of the communicants and all baptized persons in the society. This group constituted what was termed "the church" in the society. Parol evidence was introduced to show which of these bodies was intended by the devise. The jury decided that the intended devisee was the Protestant Episcopal Society and found for the defendants. The Supreme Court affirmed.

The earliest case in this line of precedents is *Brewster* v. *McCall's Devisees,* 15 Conn. 274 (1842), where the

advice of the court was sought concerning a devise to the Missionary Society of Foreign Missions, which did not exist at the time of the will or the death of the testator. The devise was claimed by, and allowed to, The American Board of Commissioners for Foreign Missions, also called the Foreign Missionary Society. In making this determination, the court stated that "[t]here is no rule applicable to devises, which requires the name of the devisee to be mentioned: it is only necessary that the description of the devisee be by words that are sufficient to denote the persons meant by the testator, and to distinguish them from all others. *Nihil facit error nominis, cum de corpore constat.* [An error in the name is of no consequence when there is certainty as to the person.] 6 Cruise's Dig. 207. . . . In *Rivers'* case, 1 Atk. 410 [1737]. Lord *Hardwicke* said, 'In the case of a devise, any thing that amounts to a *designatio personae* [a description of the person] is sufficient.' " (Emphasis in original.) *Brewster* v. *McCall's Devisees,* supra, 293.

The trial court here properly allowed extrinsic evidence to establish the intent of the testator. From the scrivener's testimony that The Joseph L. Shulman Foundation had been misdescribed in the codicil as a corporation, the court concluded that the testator intended the residuary estate to pass to the charitable organization and trust in existence and known as The Joseph L. Shulman Foundation. In this conclusion we agree. It may have been that the testator, in the rush of the circumstances under which the codicil was prepared, had forgotten the organizational details of his foundation. "If so, his lapse of memory could only be important if the inquiry were one as to his testamentary capacity. So far as concerns the construction of a will, the question always is, not what the testator meant to say, but what is meant by what he did say." *Weed* v. *Scofield,* supra, 677; *Smuda* v. *Smuda,* 153

Conn. 430, 432, 217 A.2d 59 (1966). We find that the trial court properly identified The Joseph L. Shulman Foundation as the residuary legatee under article fourteen of the decedent's will as modified by the codicil of May 16, 1972.

The plaintiff's reliance upon *Connecticut Junior Republic* v. *Sharon Hospital,* 188 Conn. 1, 448 A.2d 190 (1982), and *Smuda* v. *Smuda,* supra, in support of his position that the court erred in permitting the scrivener of the codicil to testify as to the testator's intent is misplaced. *Connecticut Junior Republic* was an appeal from an order and decree of the Probate Court "admitting to probate a will and codicils thereto." *Smuda* was an appeal from a decree of the Probate Court "denying the plaintiff's motion to reform the decedent's will." In neither case was the question before the court the correction by extrinsic evidence of a misdescription of an intended legatee or remainderman under a will.

In view of our holding, it is unnecessary to review the other issues raised in this appeal.

There is no error.

In this opinion the other judges concurred.