[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband in June of 1990. The parties were married on August 29, 1973. There is one minor child issue of the marriage, Clifford Scott Harvey born January 29, 1986. The marriage has broken down irretrievably and there is no hope of reconciliation.
Both parties are seeking sole custody of Clifford as well as support and alimony. There is presently a joint custody order in effect as a result of a pendente lite hearing.
The problems of the marriage which have resulted in the action for dissolution appear to be of two kinds — one is the way in which the defendant handled the finances and the second is that his business as an airline pilot kept him away from home several weeks at a time.
The plaintiff is a school teacher in the Milford school system earning some $47,000.00 a year and she has been teaching there for over twenty years. The defendant is a pilot who appears to have given up, at the present time, working as a pilot and instead has been working part time as a security guard for Security Systems, Inc.
While there was some violence testified to by the plaintiff in the marriage, there was no physical contact except on one occasion in January of 1991 when the protective order was issued and the defendant was ordered out of the house. His violence in the past had been directed towards objects rather than towards his wife's person.
The main problem at the present time is the defendant's inability to accept the reality of the divorce proceeding. He has tried every legal technicality and process CT Page 524 that he can find to either delay or disrupt or stop his wife from getting the divorce. Thus, he has sued both his wife and her counsel in the United States District Court. The suit was dismissed and the dismissal was upheld in the United States Circuit Court. He has brought complaints before both the state and federal grievance committees against his wife's attorney and those complaints were dismissed by both committees. He has sued the director of the state grievance committee for failure to hold a hearing on his complaints. That, too, has been dismissed. He has moved to recuse one of five judges who heard some of the motions on this matter and has also brought a complaint against another of the five judges before the Judicial Review Council. He has moved to disqualify counsel for the plaintiff from appearing in the matter on the one hand and on the other he has subpoenaed her as a witness. Another way, in the court's opinion, of attempting to exclude her from the case and require his wife to get another counsel.
The defendant has also moved to remove counsel for the child from the case.
The defendant is now in the process of seeking that this Judge Referee recuse herself and he has also notified this Judge Referee that he has filed a complaint with the Judicial Review Council.
The court does not feel that either party is the one to blame, in effect, for the divorce. It appears to the court that both parties share the responsibility, and the court, therefore, will treat this as a no fault divorce.
In making the following orders, the court has considered all of the elements set forth in 46b-81, 46b-82,46b-84, 46b-56 and 46b-56a of the General Statutes.
The issues to be determined along with the dissolution are custody, support and alimony and the distribution of the marital assets, if any.
1. The marriage has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. The court awards joint legal custody to the parties with primary residence with the plaintiff. CT Page 525
 The plaintiff shall make the day-to-day decisions concerning the child's health, welfare and education, but the parties must jointly agree on major decisions in those areas. Upon their failure to agree, they must submit the matter to the Family Relations officer of the Superior Court for his or her decision.
 Each parent shall keep the other informed about the health and welfare of the child while the child is in his or her physical custody.
 While the court is sensible of the reasoning in the Emerick case (Emerick v. Emerick, 5 Conn. App. 569), this is not a situation where the parties had no notice that joint custody would be considered since the Family Relations report, which was issued on January 9, 1992, seven months before the trial in this matter on August 25, recommended joint legal custody with primary residence with the mother and with the mother having the right to make major decisions after consultation with the father except for medical care which was to be decided jointly.
 The court finds in this case that, since there has been an order of joint custody for the past year and a half and that seems to be working well in terms of the child's progress under it according to Dr. Rosenthal, the child's therapist, it would be a mistake now to change that situation simply because neither party requested joint custody. Moreover, while the parties themselves have great difficulty in communicating with each other according to Dr. Rosenthal, it seems to this court that granting sole custody to either party would exacerbate that situation while granting joint custody means that they, in effect, are forced to communicate, and once this action is over, their ability to do so, the court believes, will increase dramatically, especially if the defendant finally accepts the reality of the situation.
VISITATION
The following is the schedule of visitation for the defendant father:
 a. Wednesdays of each week from after school until 7:00 p.m. and every other weekend from Friday after school CT Page 526 until 7:00 p.m. on Sunday.
 b. The activities of Little League and Indian Guides may be occasions for the father to visit with Clifford providing he gives the plaintiff one week's notice of his intention to do so. The notice should be in writing.
 c. In the event there is a fifth weekend or portion thereof in any month the defendant shall have visitation from the close of school on Friday, if school is in session or 4:30 p.m. if school is not in session, until 9:00 a.m. on Saturday.
 d. If school is not in session on Wednesdays, visitation shall begin at 12:00 noon and last until 7:00 p.m.
 e. Holidays shall consist of the following: New Year's Day, Easter, Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas Eve and Christmas Day. The defendant shall exercise visitation for New Year's Day, Memorial Day, Labor Day and Christmas Day in the even numbered years and for Easter, July 4th, Thanksgiving and Christmas Eve in the odd numbered years.
 For purposes of this visitation, Thanksgiving begins at 9:00 a.m. on Thursday and ends at 9:00 a.m. on the day after. Christmas Eve shall begin at 4:30 p.m. on Christmas Eve and extend until 9:00 a.m. on Christmas Day. Christmas Day shall begin at 9:00 a.m. on that day and shall extend until 9:00 a.m. on December 26th.
 For all other holiday visitations, the visitation shall begin at 6:00 p.m. on the eve of the holiday and end at 6:00 p.m. on the day of the holiday.
 When the holiday falls on a weekend and conflicts with the weekend schedule, the holiday schedule shall prevail for the weekend.
 f. The child shall spend his birthday during odd numbered years with his father and during even numbered years with his mother. Birthday celebrations shall begin at the close of school, if school is in session, until CT Page 527 the beginning of school the next morning or at 4:30 p.m. until 9:00 a.m. the next morning if school is not in session.
 When the birthday falls on a weekend, the birthday shall be incorporated in the weekend schedule except that the nonvisiting parent shall have the birthday visitation from 9:00 a.m. until 3:00 p.m. on the day of the birthday.
 g. Vacations: Each parent may spend vacation with the child away from his residence for twenty-one (21) days each year during the summer but no more than fourteen (14) days of such days may be consecutive. Plans for the exercise of this visitation shall be confirmed by the parties in writing no less than thirty (30) days prior to the end of the school year in June and shall contain provision for permitting the nontraveling parent reasonable telephone access to the child.
 For travel plans outside of Connecticut, — the consent of the nontraveling parent shall be obtained by the traveling parent prior to departure, which consent shall not be unreasonably withheld.
 h. School Vacations: The parties shall split all school vacations. Should the weekend visitation occur during the school vacation, the weekend visitation may be suspended and made up with another weekend two weeks later.
CHILD SUPPORT
The defendant is ordered to pay $75.00 a week to the plaintiff as child support. He is also ordered to pay $10.00 per week on an arrears which the court finds to be, as of September 1, 1992, $1,375.00. (See exhibit A.)
The reason for the court continuing the support order, which was initially issued by Judge Sequino in this matter on December 30, 1991, is the result of the following analysis of the defendant's financial situation.
First of all, averaging the defendant's earnings from CT Page 528 1988 through August of 1992 indicates an average earnings of $30,000.00 a year. If 1992 is eliminated, the figure is higher. In addition, the defendant continues to spend at the rate of $30,000.00 to $35,000.00 a year. (See defendant's financial affidavit dated August, 1992 where his expenses are listed at $665.38 a week or just under $35,000.00 a year.)
Up until 1991, the defendant was working as a pilot and, in addition, had a part time job as a security guard. In 1992 he ceased working as a pilot almost completely showing a gross weekly amount received from his wholly owned company known as Practical Flight Systems of $41.36, and he has been working part time as a security guard earning $7.50 an hour. His present earnings would indicate that his annual amount would be in the neighborhood of $8,000.00 or $9,000.00 for 1992. In 1991, his earnings were in the neighborhood of $12,000.00 to which he added a withdrawal of his funds from his IRA making his total earnings $16,000.00.
It is clear to the court that the defendant has deliberately decreased his earnings by failing to look for a full time job, by failing to expand his work as a pilot and by spending most of his time in litigation of his own devising. (See page two herein, supra.) Initially, he said he was going to change his occupation in order to spend more time with his son, Clifford. However, his visitation with Clifford has been once a week on Wednesdays and every other weekend. This is scarcely a basis for deciding not to work full time.
Moreover, on occasion, the defendant has used his money for things other than supporting his child. For example, he paid his parents $12,500.00 out of his IRA in 1992 while he was in arrears in his support order. In addition, he bought Clifford a bike, apparently a second bike according to his father's testimony, which cost in the neighborhood of $200.00 — while still failing to keep up his support order. The defendant also bought materials for a tree house which he put together.
While these evidence some concern for Clifford, they also demonstrate a reluctance to obey the court orders of the monetary support he owed his wife for Clifford.
At the present time the defendant is living at his parents' home, and it appears to the court that his parents are encouraging his reduced employment situation by subsidizing the CT Page 529 defendant with what amounts to rent free shelter and food.
On this basis, the court finds that the defendant has an earning capacity of some $30,000.00 a year and that the minimum the defendant should pay for child support is the present order of $75.00 per week.
With this order, the major portion of the child support will be on the plaintiff who does have gross earnings of $47,000.00 a year as a teacher in the Milford school system.
It appears to the court that the defendant believes that the support order must be based on what he is actually earning, not on what his earning capacity is. Because the order is based on the earning capacity rather than on actual earnings, the guidelines have not been used except as an indication of the total amount of support Clifford should receive. Even with this, the order does not provide the amount that defendant would be ordered to pay if he actually were earning what his capacity indicates he is able to earn were he to try to work full time.
ALIMONY
The plaintiff shall pay the defendant One ($1.00) Dollar per year as alimony until his death, remarriage or cohabitation under the meaning of the statutes, and the defendant shall pay the plaintiff One ($1.00) Dollar per year as alimony until her death, remarriage or cohabitation under the meaning of the statutes.
DIVISION OF ASSETS
The only asset which appears to be in the parties' names is the marital home. Each party does have a car, the defendant has a 1991 Mazda which he bought in 1991 and the plaintiff has a 1989 Buick on which there is some equity. Each party may retain possession of his or her own car. However, the house is the major asset. The plaintiff has been paying the mortgage and taxes since the defendant left the home in January of 1991. She would like to have the house transferred to her as lump sum alimony.
The defendant has transferred $16,000.00 of his IRA, $3,500.00 to the IRS and the balance, $12,500.00, to his parents. There is no written evidence of any obligation to his CT Page 530 parents. There is only the oral testimony that his parents are paying some of his bills and allowing him to live in their house without paying rent that was established at some $900.00 a month.
In view of the expenses both parties have, it seems to the court that the house should be sold and the net proceeds divided on the basis of 55 per cent to the plaintiff wife and 45 per cent to the defendant husband. The court has taken into consideration the action of the defendant alluded to above in disposing of his IRA in the amount of $16,000.00.
In order to effectuate the sale of the house, the parties shall agree on a real estate broker to handle the transaction. If they cannot agree, then each must pick a broker and the brokers so chosen shall then pick a third broker who will handle the sale of the house. The price to be asked for the house shall be the amount indicated on the financial affidavit of the defendant since there is only a thousand dollars difference between the defendant's and the plaintiff's estimates of value.
After the house has been on the market for three months with no movement, that price may be reduced by five (5%) per cent. If it fails to move after six (6) months, the parties shall take the recommendation of the real estate broker chosen above as to the price at which the house should be offered for sale.
Pending the sale, the plaintiff shall continue to live in the house with the minor child and pay all of the expenses of mortgage, taxes and maintenance.
Upon the sale of the house, one half of the expenses paid by the plaintiff since January of 1991 in the nature of mortgage and taxes shall be deducted from the defendant's share of the net proceeds and paid to the plaintiff.
The plaintiff shall also be liable for Homeowners' insurance pending the sale of the house and half of the expense for that shall also be deducted from the defendant's share upon the sale.
INSURANCE AND TAXES CT Page 531
Both parties shall maintain life insurance with the minor child as sole, irrevocable beneficiary in the amount of $50,000.00 each. The parties shall provide each other with written evidence that the said policy is in effect within thirty (30) days following this decision and annually thereafter.
The plaintiff shall continue to maintain medical, hospital and dental insurance for the benefit of the minor child, and the defendant shall pay for all unreimbursed medical, hospital and dental expenses for the minor child.
The plaintiff may claim the minor child as a dependent on her federal and state income tax returns.
HOUSEHOLD FURNISHINGS
All the furnishings of the marital home shall be the property of the plaintiff wife except for the clothing, stuffed Marlin and technical library, which are the husband's possessions. The defendant husband shall remove his possessions under the supervision of an officer of the law within two (2) weeks following this decision.
TELEPHONE
Plaintiff wife shall provide the defendant with her unlisted telephone number and maintain an answering machine for the defendant husband to leave messages for the minor child when the plaintiff wife and the minor child are not at home. Defendant husband shall remove the telephone service which he has listed in his name at the marital home.
LIABILITIES
Each party shall be responsible for the liabilities on his or her affidavit except for the bill of Dr. Rosenthal which is the husband's liability which should be paid within thirty (30) days of this decision.
In view of the plaintiff's deferred payments and retirement fund the action of the defendant in transferring $12,500.00 of his IRA to his parents would not seem appropriate for any action at this time. If action were to be taken, the parents would have to be made party defendants, but the court, at this time, will take no action. CT Page 532
CHURCH
The minor child, Clifford, may attend the church of his father on the weekend visitation and of his mother on the other weekends.
COUNSEL FEES
The fee of counsel for the child is hereby approved, and the parties are jointly and severally liable for the payment thereof.
WAGE WITHHOLDING
A wage withholding order shall issue.
It is so ordered.
MARGARET C. DRISCOLL, JUDGE REFEREE